[S. F. No. 6298. In Bank.—July 3, 1914.]

MARY A. COOLEY, Administratrix of the Estate of Thomas Ross Cooley, Deceased, Respondent, v. MILLER & LUX, Incorporated, et al., Appellants.

ESTATE OF DECEDENT—CONTRACT OF NONRESIDENT DEVISEES WITH AT-
TORNEY TO REPRESENT THEM DURING ADMINISTRATION—WHETHER
AMOUNTS TO MORTGAGE OR PRESENT GRANT OF PORTION OF THEIR
INTEREST IN ESTATE.—Where, pending the administration of a tes-
tator's estate, nonresident devisees enter into an agreement with an
attorney, whereby in consideration of his promise to represent them
in his professional capacity throughout the administration, they
agree to grant him a certain interest in their respective shares,
and thereafter, and while the administration is still pending, a
second agreement is executed which cancels the first, and on its face
expresses an absolute, present grant to the attorney of an interest

equal to three per cent of their respective shares, for the expressed consideration of services already rendered and to be rendered, the second agreement is to be construed as a present conveyance of the interests, not as a mere security for the payment of the attorney's services, notwithstanding a provision in the contract that any allowance made to the attorney by the court as attorney for absent heirs, should be first applied to reimburse him for all outlays made by him in rendering his services for his clients, and the balance should be credited to them on final settlement.

ID.—INTEPRETATION OF CONTRACT—LAW OF CASE.—Such interpretation of the instrument, on a former appeal, has become the law of the case and is conclusive upon the court in this present appeal.

ID.—ALLOWANCE BY COURT TO ATTORNEY—WHETHER CONSIDERED AS ADVANCEMENT ON HIS SHARE UNDER CONTRACT WITH DEVISEES.— Allowances made by the court in probate to such attorney as attorney for such "absent heirs" are to be considered as having been advanced to the devisees, and as between them and him as a part of his three per cent given to him in advance, so that on the final settlement between them he should receive property of a value, or money in a sum, which, with the sums already received, would make up his full three per cent of their shares of the estate.

ID.—ADVANCEMENT TO COTENANT—LEGAL EFFECT.—The legal effect of an advancement to a tenant in common of a part of his estate is to give him that part in severalty prior to a general partition, with the result that upon a general partition he must account for the property so received and can have only the proportion of the remainder to which he is equitably entitled. This is what was actually accomplished by the allowances in question. They were chargeable solely to the shares devised and bequeathed to the devisees, of which he had an undivided three per cent. They constituted a receipt by him of that much of said shares in severalty, being to that extent a division thereof, and they reduced the amount to which he would be ultimately entitled and correspondingly reduced his interest in what remained undivided of said shares.

ID.—ADJUSTMENT BETWEEN ATTORNEY AND DEVISEES—TIME FOR MAKING.—A provision in such contract between the attorney and the nonresident devisees that whatever allowance the court in probate should make to him as attorney for "absent heirs" should first be applied by him to reimbursing himself for all outlays made by him for their benefit, and the balance credited to them on final settlement, does not contemplate an adjustment between him and them every time he received an installment of the allowance, but rather one adjustment when his services, outlays, and the payment under the order of court ceased.

ID.—UNDUE INFLUENCE—PRESUMPTION IN CASE OF CONTRACT BETWEEN ATTORNEY AND CLIENT.—Since the relation of attorney and client did not exist between the attorney and the nonresident devisees

until the execution of the first contract, there can be no presump·
tion that he obtained such contract by undue influence; but when the
second contract was made, the confidential relation of attorney and
client existed, and any advantage gained therein by him was attended
by the presumption that it was entered into by them without suffi-
cient consideration and under undue influence.

Id.—FINAL SETTLEMENT AND DISTRIBUTION—EFFECT AS ADJUDICATION.—
The contention that the proceedings upon the settlement of the final
account and distribution constituted an adjudication to the effect
that the attorney was not entitled to receive any additional portion of
the shares of the devisees is not supported by the record.

Id.—PARTNERSHIP PROPERTY OF TESTATOR—RIGHTS OF DEVISEES AND
THEIR GRANTEE.—Where the estate of the testator consisted of an in-
terest in a partnership of which he was a member, the interest of his
devisees, and hence the interest of their attorney under the contract,
was subject to liquidation and settlement of the partnership affairs
by the surviving partner, and thereafter to administration by the
executor of the testator's will. The attorney, no more than the
devisees, had the unconditional right to a specific interest in any
particular parcel of the firm property, and his interest therein, as
theirs, was subject to disposal thereof by the surviving partner for
the purpose of liquidation.

Id.—TRANSFER OF PROPERTY TO CORPORATION—DIVESTITURE OF INTEREST.
If, during liquidation and settlement by the surviving partner, the
partnership interest of the decedent is transferred to a corporation
in exchange for shares of stock therein, and upon administration of
the estate of the testator those shares are distributed to his devisees,
the attorney is thereby divested of his right in the property of the
testator's estate, and his claim, if any, becomes limited to the shares
of stock received by the devisees in lieu of their undivided interest
in the property.

Id.—PARTNERSHIP—DEATH OF PARTNER—INVENTORY AND APPRAISE-
MENT.—The interest of a deceased partner in the property of the
firm of which he was a member at the time of his death must be
inventoried by his administrator or executor, and must be appraised
as a single item, no matter how extensive and varied in character
the firm property may be, and for the purposes of administration it
is deemed a part of the personal estate and may be sold as such.

Id.— DEATH OF PARTNER — DISSOLUTION OF FIRM — LIQUIDATION OF
AFFAIRS.—Death dissolves a partnership, and thereafter the surviv-
ing partner is authorized to act in the liquidation of its affairs. The
surviving partner so acting in liquidation may dispose of the partner-
ship property.

Id.—POSSESSION AND CONTROL OF PROPERTY ON DEATH OF PARTNER—
WHO ENTITLED TO.—On the death of one partner neither the execu·
tor nor the heirs have any right of possession of the partnership
property until the surviving partner has proceeded to its liquidation

and has delivered it over to them. The executor or administrator has only the right to demand and enforce settlement and payment and delivery over of such part thereof as may remain after final settlement by the surviving partner of the partnership affairs. The surviving partner is the only legal representative of the partnership, at least as between him and the heirs and legal representatives of the deceased member.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

Edward F. Treadwell, and Gustav Gutsch, for Appellants.

Sullivan & Sullivan and Theo. J. Roche, and John J. Barrett, for Respondent.

SHAW, J.—This is an action for the partition of real property. The defendants appeal from the judgment and from an order denying a new trial.

The claim of the plaintiff to an interest in the land is founded upon an instrument, designated in the record as "Exhibit B," purporting to be a conveyance from certain legatees and devisees under the will of Charles Lux, who died on March 15, 1887. These persons are referred to in the record as the "German heirs." They were represented in California by one of their number, Henry Lux, who was the attorney in fact for the others and as such executed for them the instrument in question. It was executed on July 14, 1890, to James H. Campbell, who was at that time the attorney for the German heirs, employed by them to represent them in the matter of the administration, settlement, and distribution of the estate of Charles Lux and to protect their interests therein in the mean time whenever it became necessary to do so. Cooley afterwards obtained the Campbell interest. The same instrument was under consideration on a former appeal in this case, the opinion being reported in 156 Cal. 510, [105 Pac. 981]. In that decision we held that the instrument was not a mortgage to secure Campbell in the ultimate payment of compensation for his services under said employment, but was a present grant of an interest in their part of the estate, and intended as payment for said services. This

decision has now become the law of the case and is conclusive upon us at this time. Upon further consideration we are satisfied that it is the correct interpretation of the instrument. The document is set forth in the previous opinion but for convenience we here give the parts thereof which are important to our present consideration, substituting "German heirs" for "parties of the first part" and "Campbell" for "party of the second part":

"The German heirs for and in consideration of the reconveyance and agreement hereinafter contained, and of the services already rendered and to be rendered by Campbell, hereby grant to said Campbell an undivided interest in all the property of the estate of Charles Lux, deceased, equal to three-hundredths (3-100) of the shares and interests therein devised to the German heirs by said decedent in his last will and testament. . . .

"It is agreed that whatever compensation shall be allowed to Campbell by the superior court of the county of San Mateo, as attorney for absent heirs, shall be first applied to reimburse him for all outlays made by him in rendering his services to the German heirs, and the balance shall be credited to the German heirs in final settlement.

"It is fully understood that the compensation herein provided for shall embrace all services rendered in the administration of said estate by Campbell up to and including the final distribution thereof."

The former appeal was from a judgment given before the great San Francisco fire of April, 1906, by which the records in the case were destroyed. It was presented in this court upon a somewhat meagre restored record. After the reversal, amended answers were filed in the superior court and there was a new trial which resulted in the judgment in favor of plaintiff. This is the subject of the present appeal.

In the opinion on the former appeal, in discussing the meaning and effect of this instrument, after stating that these allowances to an attorney for absent heirs, though paid to Campbell, were in the nature of a partial distribution to such heirs, and that the instrument evinced an intention to provide for an adjustment of the matter between them and Campbell, we said that the instrument in effect provided that he should deduct his outlays and "adjust the balance on final settlement of the estate, by considering the same as an advance-

ment solely upon the three-hundredths going to him, or, as
between him and them, 'crediting' the same to them.'' This,
as we intended it to be understood, meant that upon the final
distribution of the Lux estate, the sums paid to Campbell
should be taken as having been advanced to the German heirs,
and' that, as between him and the German heirs, it should be
considered as a part of his three per cent given to him in
advance, so that on the final. settlement between them he
should receive property of a value, or money in a sum, which,
with the sums already received, would make up his full three
per cent of their shares of the estate. In a petition by the
defendants for a rehearing, it was urged that the passage
quoted might be understood as saying that the instrument
constituted a grant to Campbell of an interest in the specific
property of the estate, in kind; whereas they claimed the
correct interpretation was that it was a grant of an amount
equal in value to three per cent of their shares of the estate,
real and personal, a grant which would be satisfied by the
receipt of either property or money, or both, equal in value
to three per cent of the value of their shares. In response
to this, in denying a rehearing, the court said that if, upon
a new trial, ''it should be claimed that the aforesaid instru-
ment should be construed as a grant of a share *in value,* only,
of the estate and not of the specific property, and that Camp-
bell has already received all, or a large part, of it, thus satisfy-
ing the grant or a due proportion of it, or if it should be
asserted that he has elected to take the whole, or part of it,
in money, by retaining such sums as he may have received
under the orders of the court as attorney for absent heirs,
and that the plaintiff is thereby estopped from now claiming
any of it, or the ratable part of it, as a share of the real estate,
there is nothing in the opinion rendered which precludes such
inquiries.''

Upon the trial from which the present appeal is taken, evi-
dence of the circumstances leading up to and attending the
execution of this instrument was introduced and the defend-
ants again claimed that it should be interpreted as above indi-
cated. The court below held the contrary. It made the
following findings of fact with reference thereto:

''It was not intended to be, nor was it in fact, an agree-
ment that Campbell should receive as his compensation for
his services as the attorney for the German heirs, money and

property equal in value to 3-100ths, of the shares of the German heirs in the said estate, and that he might receive the same from time to time during the administration of the said estate, in cash, through the instrumentality of the probate court. The true intent and meaning of Exhibit 'B,' the conduct of Campbell with reference thereto, and the circumstances of its execution, were as in these findings set out.'' Elsewhere the findings state that the instrument was ''an absolute present grant of an undivided 3-100ths of the interest of the German heirs in the estate of Charles Lux, deceased, and derived under his will,'' and that ''plaintiff as the successor in interest of the said James H. Campbell, holds the title in fee to an undivided 3-100ths of the shares derived by the German heirs from the estate of Lux.''

As to the money, the findings are that the allowances paid to Campbell by the estate of Lux as attorney for absent heirs amounted to eighty-eight thousand five hundred dollars, and that ''the payments of said $88,500 were not in any sense payments on account of any amount to which Campbell was entitled under said instrument, as claimed by defendants. The only bearing such payments had on the rights of the parties to that instrument was that on a final settlement between Campbell and the German heirs, the aggregate amount of such payments should be credited to said German heirs, and made a charge against said 3-100ths interest in said property and estate of Charles Lux, deceased, granted and conveyed to said Campbell by said instrument.''          '

The judgment declared that Campbell was the owner in fee of the 3-100ths interest in the lands and appointed a referee to take an account of the rents and profits of the lands received by the German heirs from and after the decree of distribution of the Lux estate on June 28, 1900, and of the shares of the German heirs received by them of the rents and profits of the estate of Lux on account of their shares therein from and after his death in 1887. It provided further that if, upon the report of the referee, it appeared that the share of Campbell in such rents and profits, that is to say, three hundredths thereof, equalled or exceeded eighty-eight thousand five hundred dollars, then the same should offset the eighty-eight thousand five hundred dollars previously allowed to and received by him as aforesaid, and three one-hundredths interest in the land should be set off to plaintiff, free from

any charge against it for the reimbursement to the German heirs of the eighty-eight thousand five hundred dollars, or any part thereof; but that if Campbell's share of such rents and profits did not equal eighty-eight thousand five hundred dollars, the difference between that sum and his share of such rents and profits should be charged as a lien upon the lands finally allotted to plaintiff in the partition.

The circumstances leading up to and attending the execution of this instrument, as disclosed by the findings and the uncontradicted evidence now before us, are as follows:

The estate of Lux, at his death, except the Buri Buri Ranch and a comparatively small amount of personal property, consisted of the interest of Lux in a very large estate, real and personal, which in his lifetime belonged to Lux and Henry Miller, as partners under the firm name, Miller & Lux. It was a farming partnership carrying on the business of farming the land owned by the firm and bought by it for that purpose. Prior to the death of Lux the partners had executed an agreement, which Lux incorporated in his will and confirmed thereby. This agreement provided that upon the death of either partner, the survivor should continue the business for the joint use of himself and the estate of the deceased partner, for such period of time as he deemed necessary to settle up the business without detriment or sacrifice, not exceeding seven years, during which time he was to have sole control and management, with power to sell and dispose of the same at his discretion, paying to the executor out of the rents and profits an allowance for the family of the decedent, and such part, only, of the remainder of the decedent's share thereof as he deemed not to be required for the business, of which Miller was to be the sole judge. Miller had control under this agreement and two years and four months had passed after the death of Lux. The interest of Lux in the partnership was one-half. The will of Lux gave to the German heirs an undivided one-half of the residue of his estate after paying debts, expenses of administration and about two hundred and fifty thousand dollars in legacies. The widow, Miranda W. Lux, took the other half as community property. In January, 1888, the German heirs had employed Campbell as their attorney to advise and act for them throughout the administration of the estate until final settlement, bring and defend all actions relating thereto in their interest and secure

as speedy a settlement as possible. A written agreement, dated January 6, 1888, had been executed to that effect and the German heirs had therein agreed to assign and grant to him, as compensation for such services, three-hundredths of their shares of the estate, upon the condition that if he failed to perform his covenants therein, the contract might be rescinded, and thereupon he should cease to be their attorney, the agreement should be annulled and he should release to them all benefits to be derived by him from its terms. He had been, in April, 1889, appointed by the court as attorney for the German heirs, they being designated in the order as "absent heirs," but he had received no compensation as such, nor any compensation for services under his employment. The estate had been appraised in May, 1890, the Buri Buri Ranch being valued at $145,615, the interest of the estate in the Miller & Lux lands at $1,542,610, and the interest of the estate in the Miller & Lux personal property at $920,072.94. The Buri Buri Ranch had been distributed on July 10, 1890. It was not community property and it was devised to the widow for her life, with remainder in fee to Philip Lux. An agreement for its sale had been made which was executed soon afterwards. On July 10, 1890, Campbell had filed an application to the probate court for an allowance out of the estate to him as attorney for absent heirs and it had been set for hearing on July 18, 1890. Under these circumstances, on July 14, 1890, the instrument, Exhibit B, was executed.

We perceive nothing in the extrinsic facts to change the meaning and effect of the instrument as we understood it and stated it to be upon the former appeal. On the contrary, they strengthen and confirm the interpretation then given. The grant was of an undivided interest "equal to" three per cent of their shares. It was made to Campbell as compensation for his services. No debt from the German heirs to him on account of the services thereafter existed, otherwise it would have been a mere mortgage, carrying no title. Upon the former appeal this point was decided and it has become the law of the case. It was a transfer by tenants in common of an interest in an estate consisting of real and personal property. If at any time Campbell received from the others, in severalty, upon his share, more than his proportion of any one parcel, or more than his proportion of one kind of property, the result would necessarily be that his proportional in-

terest in what remained would be reduced correspondingly.
For illustration, if four persons own one thousand acres of
land in common, uniform in value, three having each three-
tenths thereof, equivalent to three hundred acres each, and
the fourth one-tenth, equivalent to one hundred acres, and
the fourth receives from the others a conveyance of fifty
acres in severalty as part of his interest, he would not then
be entitled, in partition, to one-tenth of the remaining nine
hundred and fifty acres, but only to one nineteenth thereof,
that is, the proportion of fifty to nine hundred and fifty.
And if the acreage was not of equal value, a partition of the
remainder could not be made without a valuation of the land
so as to give each his proportion in value of what remained.
So if the common estate consisted of real and personal prop-
erty and before a general partition one tenant received from
the others a sum of money in severalty, to be applied upon
his share, the same result follows; his interest in the remain-
der would be reduced accordingly and a valuation of the
remainder would be required in order to make an equitable
partition. There is nothing in the instrument of July 14,
1890, or in that of January 6, 1888, which can be treated
as providing that the sums paid as allowances to Campbell
under the order were to be considered as loans by the German
heirs to Campbell, to be charged against his interests and
made a lien thereon, upon a final partition, if not repaid by
him previously. The intent that they were to be advance-
ments on his share of their interests is clear. The legal effect
of an advancement to a tenant in common of a part of his
estate is to give him that part in severalty prior to a general
partition, with the result that upon a general partition he
must account for the property so received and can have only
the proportion of the remainder to which he is equitably en-
titled.

This is what was actually accomplished by the allowances
in question. They were chargeable solely to the shares de-
vised and bequeathed to the German heirs, of which he had
an undivided three per cent. They constituted a receipt by
him of that much of said shares in severalty, being to that
extent a division thereof and they reduced the amount to
which he would be ultimately entitled and correspondingly
reduce his interest in what remained undivided of said shares.
This would be the legal effect of the transaction even if the

provision that they should be credited to the German heirs
in final settlement had not been inserted in the grant. It
follows that the findings are contrary to the legal effect of the
evidence and the judgment is erroneous. A valuation must
be made of the interests of the German heirs as compared
to that which Campbell received. After deducting his out-
lays, if any, the balance must be charged to him as property
of the common estate received by him in severalty from the
other tenants in common and as a satisfaction, *pro tanto,* of
his interest. If such balance is equal to three-hundredths
of the value of the shares of the German heirs, he will have
received his full share and will have no interest in the prop-
erty in question. If it is less than a three-hundredths, it
will not extinguish his interest entirely, but will reduce it
proportionally. It will then be only such proportion of the
property as the difference between such balance and the three-
hundredths to which he was originally entitled bears to the
value of the property remaining at that time.

The question arises whether, if this principle is rigidly ap-
plied, this adjustment of interest according to value should
not be repeated every time Campbell received an installment
of the allowance. If this were so, it would make the adjust-
ment at this late date well nigh impossible, and extremely
difficult at all times. We do not think such repetition was
contemplated or intended. It is provided that his outlays
must be first deducted. This implies that a completion of
his contract to perform the services was to precede the ad-
justment, since until that time it could not be determined
what his outlays were. The most reasonable interpretation
of the instrument upon this point is that the valuation should
be made at the time that his services, his outlays, and the pay-
ments under the order ceased. The adjustment could then
be made and his precise remaining proportion determined.
The valuation of the shares of the German heirs should be
made as of the year 1896 and his remaining interest deter-
mined as of that date. If any remained to him, it would of
course increase or decrease in value with the rise or fall of
the value of the property subsequently, but his relative pro-
portion would remain the same.

As the result of these conclusions, the judgment and order
appealed from must be reversed. Some points which will
be material upon a new trial are fully presented by the record

now before us and we deem it advisable to consider and decide them.

In the ruling upon the motion for a nonsuit the court below held that the burden was upon the defendants to prove that the instrument designated Exhibit B was obtained by undue influence. In this we think the court erred. Campbell's employment as attorney for the German heirs was made by the agreement of January 6, 1888, designated as Exhibit A. He did not become their attorney until that instrument was executed. The relation did not exist until the negotiations were closed and the execution completed. Hence, the rules regarding the presumption of undue influence against a person who obtains an advantage from another while occupying the relation of trustee toward him, do not apply to that instrument. (See *Cooley* v. *Miller & Lux,* 156 Cal. 524, [105 Pac. 981].) But after its execution the confidential relation existed and any transaction thereafter between him and the German heirs, touching the subject matter of his employment, whereby he gained any advantage from them, would be attended by the presumption against him that it was entered into by them "without sufficient consideration, and under undue influence." (Civ. Code, secs. 2219, 2235.) The instrument of July 14, 1890, under which the plaintiff claims, constituted such a transaction. The instrument of January 6, 1888, was subject to the condition expressed therein that if Campbell should violate any of his covenants therein, or neglect to perform his duties or obligations thereunder, the grant might be immediately rescinded and that thereupon he should cease to be their attorney and should release to them all benefits to accrue to him therefrom. The instrument of July 14, 1890, expressly annulled that of 1888 and did not contain any condition subsequent whatever. It was an outright grant. The elimination of this condition by the second contract was a distinct advantage to Campbell and the presumption of undue influence attached to the transaction. The burden was therefore upon him to prove that the instrument was not procured by undue influence, in order to establish its validity. The fact that he obtained this advantage from them while the confidential relation existed was shown by the plaintiff's evidence in the opening of his case, but no evidence to overcome the presumption of undue influence was

given by him. For this reason the court erred in denying the motion for a nonsuit.

It is claimed that the proceedings upon the settlement of the final account and distribution of the estate of Charles Lux constituted an adjudication to the effect that Campbell was not entitled to receive any additional portion of the shares of the German heirs. We do not think this contention is supported by the record. It is true that in August, 1896, the German heirs, in their petition to the court to revoke the order allowing Campbell twelve thousand dollars a year as attorney for absent heirs, alleged as a ground therefor that he had already received, under said order, more than his three per cent of their shares under the grant and that the court thereupon revoked the order. But the court had power to revoke the order without determining that Campbell had received his full share and the order of revocation shows that this question was not decided. It declared that "all questions as to compensation of the said J. H. Campbell, as attorney for any heirs of said estate, are hereby reserved until the final accounts of the administration of said estate having been settled, the said estate is ready for distribution; and that said questions be then considered and determined by the court in connection with the final distribution of said estate." This does not purport to continue the trial of the issues upon the petition for revocation to the time of final settlement, as contended by defendants. That petition was granted and that proceeding terminated.. The purpose of the reservation was to show that the order was revoked without deciding the issue as to Campbell's compensation or the amount he had received under the grant; to inform the parties that all questions of compensation would be left for determination at final settlement. If at the final settlement, which took place more than three years afterwards, the German heirs had again presented the issue that his grant was satisfied, either by bringing forward the former petition or by a new one, the denial of further allowances to Campbell might have been an adjudication of the question. But the matter was not so presented. The only issue decided upon the settlement of the final account was that presented by Campbell's exception thereto. This exception was placed upon the narrow ground that the order of allowance was not revoked until January, 1897, and that at that time there had accrued to him under the order, the

sum of nineteen thousand five hundred dollars which still remained unpaid. His claim was based entirely upon the order and upon the theory that he had a vested right to the compensation fixed until the order was revoked. So far as appears from the record before us, no claim to a share of the estate, nor any claim by the German heirs that his share thereunder had been received was presented at that time. In fact, he had previously, on November 8, 1896, conveyed whatever interest then remained in him thereunder to John H. Campbell, who, on July 2, 1897, had conveyed and assigned the same to Cooley. No mention of these deeds appear in the record of the proceeding in the Lux estate. The adjudication was nothing more than a decision that Campbell was not entitled to any money in virtue of the order. In the supreme court, the decision was based upon the ground that the order was void because Campbell had been employed by the German heirs before the order was made and, hence, that they were not ''absent heirs'' for whom the court was authorized by the statute to appoint an attorney and fix his compensation, and that in such case the attorney's fee must be determined by the contract existing between them, and upon the further ground that, conceding the power to appoint, the court had no power to fix the compensation in advance, but only after knowledge of the facts and in such amount as it should then deem reasonable.

The remaining question of importance arises upon the claim of the appellants that the interest of Campbell's successor in a considerable portion of the land in controversy was extinguished, or transferred to certain shares of stock in the corporation known as Miller & Lux. It will be necessary to state the facts at some length.

Miller did not settle the partnership affairs as promptly as the interested parties wished. On June 10, 1892, he having resigned as executor, the other executors of Lux began an action against Miller, entitled Potter *v.* Miller, alleging therein that he had failed and neglected to liquidate the partnership assets and affairs and give over to the executors the money and property due to the estate of Lux, and praying that he be compelled to account and settle the same and that, if necessary to that end, a partition be made of the land belonging to the firm and that one-half thereof be allotted to the executors as representatives of Charles Lux, deceased. Afterwards

the German heirs were made parties to the action. Campbell, however, was not made a party.

In that action a partial partition was made and judgment allotting the lands partitioned was made on December 24, 1896. These are referred to in the record herein as "divided lands." They constitute a part of the lands in which plaintiff claims a three-hundredths interest. By that judgment the Lux share of the so-called "divided lands" was set off in severalty to the executors of the estate of Lux and certain other lands not here involved were set off to Henry Miller, and it was ordered that the suit should be continued as to other matters. It is conceded by the appellants that the plaintiff is not estopped by this partition, nor by the decree of distribution in the estate of Lux, from claiming an interest in their shares of the Lux "divided lands," under and by virtue of the grant from the German heirs.

Thereafter on April 8, 1897, while said suit was still pending as to the matters not adjudicated, the said Henry Miller, as surviving partner aforesaid, the said executors of the estate of Charles Lux, the German heirs, and the successors of the deceased widow, executed an agreement providing for the liquidation and settlement of the partnership affairs of Miller & Lux and for the final settlement and distribution of the estate of Lux.

This agreement recited that an account of Miller, the surviving partner, had been settled between Miller and the other interested parties, showing that there was owing to Miller from the firm the sum of $125,027.75, that it had been and then was impracticable to sell any considerable part of the very large landed property of the firm or to liquidate and close the partnership business, and that it would require an extended period to do so, because of the great amount of property and complicated nature of the business, and that all parties were desirous of effecting a settlement and dividing the property between the parties according to their interests. It provided to that end, that a corporation should be formed under the name of "Miller & Lux," for the purpose of acquiring the firm property, disposing of the same as speedily as should be advantageous, and dividing the proceeds among the stockholders and, in the mean time, to conduct the business formerly carried on by the said partnership, that it should have a capital stock of twelve million dollars, divided

into one hundred and twenty thousand shares of the par value of one hundred dollars each, that all stock thereof should be issued as fully paid up and unassessable, that Miller should be the president and general manager of said corporation, that when said corporation should be formed the parties should consent to a final judgment in said suit of Potter *v.* Miller ratifying and approving the settlement of the firm accounts, confirming all the acts of Miller as surviving partner, and declaring and specifying the respective interests of Miller and the estate of Lux in the partnership assets, and that thereupon Miller, as such surviving partner and as an individual, and all the other parties should convey and assign to said corporation all of their and each of their right, title, and interest in and to all the property, assets, and effects of said firm, excepting the said "divided lands" partitioned out as aforesaid. It further declared that the consideration of said conveyances should be the capital stock of said corporation in certain stated proportions and one million seven hundred and fifty thousand dollars in money, one-half the stock to be issued to Henry Miller, one-fourth to the German heirs, and one-fourth to the successors of the deceased widow of Lux, the money to be paid by said corporation in the same proportions to the same persons, but in ten annual installments aggregating one hundred and seventy-five thousand dollars each. It also provided that a decree of final distribution should be procured in the matter of the estate of Lux distributing to said corporation all the property so to be conveyed to it by said parties and that the agreement itself should be subject to the approval of the court, both in Potter *v.* Miller and in the Estate of Lux.

In pursuance of said agreement said corporation, Miller & Lux, was formed and on June 4, 1897, Miller, as surviving partner and individually, conveyed to it all the property and assets of said firm, except the "divided lands," and the other parties also conveyed their interests therein to said corporation.

Thereafter, on July 22, 1897, in the suit of Potter *v.* Miller, a supplemental complaint was filed setting up said agreement and the proceedings and conveyances under it. On August 1, 1898, in said action judgment was given confirming all the acts of Miller as surviving partner and the account as settled by said agreement, and declaring

that the conveyance made by Miller on June 4, 1897, to said corporation, of all the property and assets of said firm, be ratified, approved, and confirmed.

The petition for distribution in the estate of Charles Lux, deceased, which was filed on June 13, 1900, set forth the execution and terms of the agreemeent of April 8, 1897, aforesaid, the conveyances made in pursuance thereof, and the confirmation thereof in Potter *v.* Miller, and alleged that the executors of Lux, in pursuance of said agreement and judgment, had received one-half of the capital stock of the Miller & Lux corporation in exchange for the property so conveyed, as provided in the agreement and that the residuary legatees and devisees under the will of Lux were entitled to distribution of said stock in proportion to their interests in the property of Lux, under the will. Upon this petition and after legal notice thereof, the court, on July 3, 1890, made and entered a final decree of distribution of said estate. This decree expressly ratified, approved, and confirmed all conveyances of real property made by Miller as surviving partner prior to June 6, 1897. This included the deed of June 4, 1897, conveying the lands of the firm to said corporation. It then distributed to said corporation the lands conveyed to it in pursuance of the settlement agreement and to the German heirs the shares of stock in the corporation allotted to them by the agreement, that is one-fourth of said shares, each being given a number of shares equal to his interest in the residue of the Lux estate. The lands so distributed to said corporation are a part of the lands of which the plaintiff now seeks partition under the grant to him of July 14, 1890.

The interest of a deceased partner in the property of a firm of which he was a member at the time of his death must be inventoried by his administrator or executor, and must be appraised as a single item, no matter how extensive and varied in character the firm property may be, and for the purposes of administration it is deemed a part of the personal estate and may be sold as such. (Code Civ. Proc., secs. 1445, 1524; Woerner on Administration, secs. 124, 126.) Death dissolves a partnership and thereafter the surviving partners are authorized to act in the liquidation of its affairs. (Civ. Code, secs. 2450, 2459.) Such surviving partner so acting in liquidation may ''dispose of the partnership property.'' (Civ. Code, sec. 2461.) The agreement incorporated into Lux's will also

gave Miller this power. Neither the executor nor the heirs have any right of possession of the partnership property until the surviving partner has proceeded to its liquidation and has delivered it over to them. The executor or administrator has only the right to demand and enforce settlement and payment and delivery over of such part thereof as may remain after final settlement by the surviving partner of the partnership affairs. The surviving partner is the only legal representative of the partnership, at least as between him and the heirs and legal representatives of the deceased member. (*Smith* v. *Walker,* 38 Cal. 392, [99 Pac. 415; *Allen* v. *Hill,* 16 Cal. 119; *Robertson* v. *Burrell,* 110 Cal. 568, [42 Pac. 1086].) "The surviving partner has the right to continue in possession of the partnership, and to settle its business, but the interest of the decedent in the partnership must be included in the inventory, and be appraised as other property. A surviving partner must settle the affairs of the partnership without delay, and account with the executor or administrator, and pay over such balances as may from time to time be payable to him, in right of the decedent." (Code Civ. Proc. sec. 1585.)

It will be seen from the foregoing statement of the law that the interest of the German heirs, at the time of the grant to Campbell, was subject to a double process before it could come into their possession: 1. The liquidation and settlement of the partnership affairs by the surviving partner; and, 2. The administration of the estate of Lux and the distribution thereof by the executors of his estate, after the partnership affairs were settled. Campbell obtained no greater estate or better right than that of his grantors. He, no more than they, had the unconditional right to a specific interest in any particular parcel of the firm property, and his interest therein, as theirs, was subject to disposal thereof by the surviving partner for the purpose of liquidation.

Upon the former appeal, we held that the decree of distribution did not preclude the plaintiff, as Campbell's successor, from claiming a three-hundredths interest in the property thereby distributed to the German heirs. The decree was not entirely without effect upon the plaintiff, however. It was a proceeding *quasi in rem,* of which he had due notice. The German heirs, in effect, represented him in the distribution and he is bound thereby so far as they are bound, he being

their grantee, if he had any interest at all. It follows that his claim was thereby divested as to all the property of the Lux estate, including its interest in the Miller & Lux lands, except that which was distributed to them. By that decree, as we have seen, they received no interest in the lands distributed to the Miller & Lux corporation, but, instead thereof, received shares of the stock of said corporation. This disposition is binding upon the plaintiff and it divested him of any interest he might have had in said lands and limits his claim, if any, to the shares of stock so received by the German heirs in lieu of their undivided interest in said lands. The decree is the equivalent of a partition, and as no appeal was taken therefrom, it is now conclusive and binding upon the German heirs and upon all persons claiming under them. (*William Hill Co.* v. *Lawler,* 116 Cal. 364, [48 Pac. 323]; *Cooley* v. *Miller & Lux,* 156 Cal. 519, [105 Pac. 981]; *McKenzie* v. *Budd,* 125 Cal. 602, [58 Pac. 199]; *Cunha* v. *Hughes,* 122 Cal. 112, [68 Am. St. Rep. 27, 54 Pac. 535]; *Matter of Trescony,* 119 Cal. 570, [51 Pac. 951]; *Martinovich* v. *Marsicano,* 137 Cal. 359, [70 Pac. 459].)

To the suggestion that the lands were distributed to the Miller & Lux corporation as grantee of the German heirs and that therefore it was substituted to their place with respect to plaintiff's claim upon their shares, and that, therefore, the corporation stands seized of these lands as for his use, to the extent of his interest, there are, at least, two sufficient answers. In the first place, as above shown, Miller, as surviving partner and in settlement of the partnership affairs, had conveyed these lands to that corporation, in consideration of the stock and money to be issued and paid by it to the parties interested in the firm assets. This was a disposition which he had power to make as surviving partner and it was binding on the estate of Lux and all persons claiming interests in said estate, including the plaintiff. The heirs and devisees of a deceased partner are as much bound by the disposition of the firm property by the surviving partner in settlement of the firm affairs, as they are by the distribution of the decedent's property by the probate court in the proceeding for administration. It was expressly held in *Robertson* v. *Burrell,* 110 Cal. 568, [42 Pac. 1086], that the heirs at law or devisees of a deceased partner have no right to sue the surviving partner to compel a settlement of the partnership affairs, that such

settlement is not to be made with them, but with the executor or administrator of the deceased partner, and that such executor or administrator, alone, may demand and sue for such settlement. The settlement here in question was made between the surviving partner and the executors of Lux and, upon the authority of the case just cited, it was conclusive upon the heirs and devisees of the estate of Lux. The title of the corporation, prior to distribution, was therefore received from Miller as surviving partner and not from the German heirs. Their conveyances added nothing to this title and imposed no burden or trust thereon in favor of the plaintiff. They were doubtless given merely to forestall questions as to the title. In the second place, the corporation was manifestly acting in good faith and, in reliance upon these agreements and decrees as a final settlement of the partnership affairs and of the estate, it has issued the stock and paid the money as agreed upon. The plaintiff, as grantee of the German heirs, had the right either to present his claim and ask distribution directly to himself of his interest or the equivalent thereof in severalty, or to make no appearance, abide by the result and be thereby afterward limited to a claim solely upon the property distributed to his grantees. He was constructively a party to the proceeding for distribution and he is charged with notice of that which the record thereof would have disclosed to him, including the fact that the corporation was receiving this land as a distribution upon final settlement of the estate and of the partnership and was issuing its stock and paying this money in consideration thereof. Having allowed the matter to proceed and the stock and money to be issued and paid, with full knowledge of the facts, he is now estopped to claim an interest in any property except that which was distributed to the German heirs. He cannot claim an interest in the lands conveyed by Miller to the corporation and distributed to it by the final decree of distribution in the Lux estate. The court erred in declaring that he had an interest in these lands.

The judgment and order are reversed.

Sloss, J., Angellotti, J., Henshaw, J., Lorigan, J., and Melvin, J., concurred.

Rehearing denied.