[Civ. No. 14207. Second Dist., Div. Three. June 2, 1944.]

CAROLYN SWANSON, Respondent, v. WALTER E. HEMPSTEAD, JR., et al., Appellants.

Harry Sutton for Appellants.

Frank L. Simons for Respondent.

THE COURT.—We find the judgment in this case to be based on findings which are inconsistent with the theory of the pleadings. We recognize that in the administration

of justice pleadings are a means to an end, not an end in themselves, and that an issue which has been tried and determined should not be removed from the foundation of the resulting judgment just because it was not an issue within the framework of the pleadings. ■ Where, however, the judgment rests upon the determination of issues which were neither foreshadowed by the pleadings nor understood by the parties to be in dispute at the trial, and which determination is the result of one party's failure to produce evidence of whose need he has had no warning, we have a case where the departure from the pleadings may not be merely technical, but substantial, resulting in a miscarriage of justice. We find that to be the situation in this case.

The case went to trial upon the issues created by the complaint and the joint answer of the three defendants. By the silence of their answer the defendants admitted the allegations of the complaint that they were attorneys at law, that the plaintiff employed them to perform certain legal services, and entered into the following contract of employment with them: ''THE UNDERSIGNED, hereinafter called the client, hereby retain Walter E. Hempstead, Jr., Attorney at Law, hereinafter called the attorney to: Institute suit against Vivian Gardner Williams, Frank Williams, Hazel Campbell, Harry Lindley for the purpose of recovering money and property owed by said persons to undersigned, or held in trust by said persons for undersigned, and agrees that the attorney is empowered to perform the said services for and on behalf of the client, and in his name, and to do all things necessary, appropiate or advisable, or which the attorney may deem necessary, appropriate or advisable, thereto whether by instituting and maintaining to completion an action or actions or other legal proceedings, or otherwise, either before or after judgment, or judgments.

''As compensation for the services of the attorney, the client will pay the sum of 50 per cent of any money or property paid, received or collected, by action, compromise or otherwise, upon or in satisdaction of any claim, or recovery made, incident to, or as a result of, the said services.

''The client will advance all necessary fees, costs and expnses incident to the performance of said services.

''This retainer shall be irrevocable, in so far as it may be made such, and the discharge, or attempted discharge of the attorney, or the sale, assignment, transfer, or encum-

brance of claim or right of recovery, or the proceeds thereof, or any judgment thereon, whether resulting from his services or otherwise, shall not affect or distroy his right and interest in the said claim, right of recovery, the proceeds thereof, or judgment thereon.

"This retainer shall operate as an assignment pro tanto to said attorney, of any claim or right of recovery, in so far as such assignment may be lawful, arising out of, or incidant to, the matter or matters in which the attorney is retained to perform said services, and of anything received or collected thereon or of judgments obtained thereon.

"Both the attorney and client will use their best efforts in furthering the purpose of this retainer and in obtaining the necessary evidence and attendance of witnesses.

"This retainer is executed in duplicate and the client acknowledges receipt of a copy thereof. Should it be necessrary to institute legal proceedings for the collection of any part of the aforesaid sums, the client agrees to pay costs of Court and a reasonable attorney fee therefor. Client hereby gives and grants to said attorney a lien upon the aforesaid claim and cause of action as security for the payment of compensation herein agreed upon to be paid said attorney."

After entering into this contract, the complaint continues, the defendants performed certain legal services for the plaintiff between December 12, 1941, the date of the contract, and the 20th day of the following January, "for which the said defendants were paid in full." Two events are then alleged to have taken place, on the two following days, as though they had no relation to what had gone before. On January 21, it is alleged, one Vivian Williams made a promissory note for $2,825, payable to plaintiff, in lieu of and in cancellation of a promissory note for $2,900, dated May 7, 1941, and in consideration of the cancellation of the former note and of other obligations owing from Vivian Williams to the plaintiff, and of the dismissal with prejudice of an action brought by the plaintiff upon the $2,900 note. Then, on January 22, plaintiff complained, the defendants "caused" her to execute to them, without any consideration, an assignment of an undivided one-half interest in the new note, which had been delivered to them and of which they have ever since held exclusive possession, collecting and retaining for themselves 50 per cent of the $50 monthly installments paid upon it. The plaintiff has demanded that the defendants cancel the assignment, de-

liver the new note and the payments they have received and retained, under it, to the plaintiff, but that the defendants have refused to comply with these demands, claiming an interest in the note because of the retainer contract. The complaint then concludes its averments with the statement: "that an actual controversy exists between the plaintiff and the said defendants respecting the said contract, Exhibit 'A', and as to what the said Exhibit 'A' covered, or covers, and of the interest, if any, which the said defendants have, or should have, in and to said promissory note, plaintiff's Exhibit 'B', and that the said plaintiff herein requests a determination by this Honorable Court of the construction of the said contract, plaintiff's Exhibit 'A', and of the validity of the assignment of the interest in the promissory note, plaintiff's Exhibit 'B'." The prayer is for a decree that the promissory note does not fall within the purview of the retainer contract and that it and all moneys the defendants have collected under it be delivered to the plaintiff.

The trial court found that each allegation of the complaint was true, a finding broader than the evidence justified, but made no finding on new matter set up in the answer, in which facts were alleged that were established by the evidence beyond dispute. That is, contrary to the allegations of the complaint, and its implications, the services rendered by the defendants were not limited to the period between December 12 and January 20, nor were they paid for in full. As alleged by the answer and proved beyond question, the defendants brought an attachment action on plaintiff's behalf against Vivian Williams on a $2,900 note and upon plaintiff's claim that almost $1,250 more was due her, and a levy netted some $57. A compromise was then effected whereby Vivian Williams transferred to plaintiff "certain personal property" [an automobile] and executed a new note for $2,825 in her favor. This compromise was not reached until January 21, and some of the details, including the execution of the assignment of the one-half interest in the note, were not completed until the next day. The new note, for some time prior to the trial, had been in the possession of a bank, which was making the collections at the defendants' expense, and forwarding one-half of the monthly payments received to the plaintiff, one-half to the defendants.

We have reviewed the pleadings somewhat extensively to show that the issues which they presented were simple. The

ultimate issue was whether or not the defendants had a half interest in the new note. That issue depended upon the interpretation to be given to the retainer agreement and upon the endeavor of the plaintiff to have it appear that the assignment she executed was a transaction separate from all others, and was without consideration. There was no suggestion anywhere of a contention on plaintiff's part that the retainer agreement had been signed by her as a result of overreaching, that her confidence had been abused, or that, for any other reason, the contract was not valid.

The judgment which was entered in this case cannot be successfully defended upon the finding that the complaint's allegations are true, even if it were not the fact that, in part, this finding has no support in the evidence. Beyond decreeing that the assignment of the half interest in the new note was without effect, and was cancelled, and that the note should be delivered to the plaintiff, the judgment declared that the retainer contract was likewise invalid, and cancelled it, and gave plaintiff judgment against each defendant for $279, the amount already received by the defendants over $250, which was found to be the reasonable value of their services. The portion of the decree which cancelled the retainer contract was based on findings that the retainer contract was an unconscionable contract; that at the time it was entered into the plaintiff was the client of the defendants, and that in getting her to enter into the contract they took undue advantage of her and practiced fraud upon her. Oddly enough, the support in the evidence for the finding that at the time the retainer contract was entered into the plaintiff was defendant's client, is found in the testimony of the defendants, and then only goes to show that one of the defendants had been employed by, or had even met, her. The plaintiff as a witness most positively denied that she had employed any of the defendants as her counsel prior to December 12. The trial court, of course, could disbelieve her positive statements and yet decide in her favor, on the defendants' testimony, but the circumstance is further proof that the theory upon which the judgment depends was not at all the theory on which the plaintiff came into court or presented her case. She must have been happily surprised at the outcome.

The defendants, also, were surprised, and prejudically so. The trial court's findings, that the retainer contract was

unconscionable, that the defendants took an undue advantage of the plaintiff, and practiced fraud upon her, must find support, if they have any, either in the evidence introduced or by a presumption which cast a burden upon the defendants that they did not sustain. The evidence produced does not support any one of the three findings. Picking here and there in the testimony to obtain the bits which best support the findings, we learn that the first contact that the plaintiff had with any of the defendants was on or about December 9, 1941, when she was introduced to defendant Hempstead in a corner drugstore. The plaintiff, it developed, had had some dealings with the Vivian Williams mentioned in the retainer contract, with the result that Mrs. Williams had the plaintiff's stove and ice box in operation in Mrs. Williams' home, and had some other of plaintiff's household effects in her garage. Hempstead assisted the plaintiff in obtaining possession of this property. According to her testimony he was not employed and did nothing to help her until after the retainer agreement was signed, but, as we have already noted, the trial court must have accepted the defendant Hempstead's testimony, at least in part, that he had agreed with the plaintiff, some time before December 12, to attempt to recover the stove and other articles, his fee to be 50 per cent of what was recovered. His services under this agreement, it would appear, began prior to, but were not concluded until some time after, the execution of the retainer agreement.

Plaintiff's difficulties were more extensive than the loss of possession of these household goods, and for relief with respect to her further wrongs Hempstead introduced her to defendant Widoff, with whom he shared an office suite and had been associated in some cases. Widoff was told that the plaintiff had advanced to or on behalf of Mrs. Williams various sums amounting to over $4,100, and that Mrs. Williams had an automobile belonging to the plaintiff. The automobile was registered in the name of Mrs. Williams, and there was no writing indicating that the plaintiff had any interest in it, but the plaintiff claimed to own it by virtue of the fact that she had paid $395 for it, having purchased it some time earlier for some business she and Mrs. Williams were running. The only written evidence known to exist in support of plaintiff's claim that Mrs. Williams owed her $4,100 was a promissory note for $2,900 (on which $75 had been paid)—and she did not have that. An attorney had had possession of it,

but its present whereabouts was not known. (It later developed that this note represented, in effect, an account stated between the plaintiff and Mrs. Williams.) Mrs. Williams had no revealed assets other than her proprietary interest in a beer parlor known as the Cave Man's Cafe and an action pending for the death of one who, she claimed, but could not prove, was her husband, an action which was soon thereafter settled for $250. She had no money with which to pay attorney fees and none immediately available for court costs.

We cannot state with certainty just how many of these facts were told Widoff and how many the plaintiff failed to disclose to him, at their first meeting. At best, the situation presented to him was one where the only fees that could be expected would come from proving a claim that might be defeated by a denial as persuasive as the claim, and then making a collection from a defaulting, impecunious debtor. It may be that on a retrial additional facts will appear, revealing this to be an invalid contract. But declining to take such a case as was outlined to the defendant except on the terms set forth in the retainer contract, cannot be fairly said to be the practice of fraud upon, or taking undue advantage of, the one seeking legal services. Attorneys are often called upon and frequently do render service without expectation of reward, but there is no legal duty requiring them to do so in such a situation as that presented here.

Nor is there any justification in the evidence produced for characterizing the contract as "unconscionable." ▮ An "unconscionable contract," the authorities are agreed (65 C. J. 1201, 43 Words and Phrases, 78, 79), is one " 'such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other.' " (*Carter* v. *Boone County Trust Co.* (1935), 338 Mo. 629, [92 S.W.2d 647, 657].) ▮ Whether or not a contingent fee contract is unconscionable, even were that term to be given a less drastic meaning than the authorities ascribe to it, must be determined upon the situation as it fairly appears to the parties at the time it is entered into, not as subsequent events reveal it to be. Implicit in the nature of the contract is speculation on the outcome. A fee of 50 per cent of a recovery sure to be made, or which, had a reasonable effort been made to ascertain the facts, would appear to be sure, might well be held unconscionable. But that cannot be and is not plaintiff's postion under the evidence produced in

this case. The present contract is unconscionable, she argues, because the defendants have received $529.52 for no more work than bringing an attachment action, levying an attachment by which some $57 was netted, bringing about a settlement whereby "plaintiff's" car was recovered and sold, a new note with better terms obtained in lieu of the lost one, and, as a consequence of a number of letters written by the defendants, monthly payments of $50 each, amounting to $750, have been collected on the note; and for every dollar still to be received on the note—if any more will be received —the defendants will obtain 50¢. This argument, based on hindsight, is not a valid argument upon the question which the pleadings did not present but the trial court raised: Was the retainer contract unconscionable?

There remains the possibility, probability indeed, that the trial court made the findings it did, not because of the evidence produced, but rather because of that not produced. This would be on the principle that, it having been found that the relation of client and attorney existed between the plaintiff and the defendants at the time the retainer contract was entered into, a burden was cast upon the defendants to prove that the contract was valid. The extent of that burden has been prescribed by statute in these words of section 2235, Civil Code (*Luiz* v. *Queen of Angels Hospital* (1942), 53 Cal.App.2d 310, 312 [127 P.2d 966]): "All transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration, and under undue influence." By case law the burden is somewhat greater (*Hawkins* v. *Faries* (1942), 49 Cal.App.2d 186, 189 [121 P.2d 20]): "Actually, the transactions here involved having been between attorneys and their client, the question is whether the respondent attorneys overcame by clear and satisfactory evidence the presumption of invalidity which arises from such transactions. 'All dealings between an attorney and his client for the benefit of the former are not only closely scrutinized, but are presumptively invalid on the ground of constructive fraud and such presumption can be overcome only by the clearest and most satisfactory evidence. Not only must the attorney offer clear and satisfactory evidence that the transaction between himself and his client was fair and equitable,

and no advantage was taken by him, but he must also offer proof that the client was fully informed of all matters relative to the transaction and was so placed as to be able to act understandingly and to deal with the attorney at arm's-length.' (*Estate of Witt*, 198 Cal. 407, 419 [245 P. 197].) To the same effect see *Kisling* v. *Shaw*, 33 Cal. 425 [91 Am.Dec. 644]; *Cooley* v. *Miller & Lux*, 156 Cal. 510 [105 P. 981]; *Clark* v. *Millsap*, 197 Cal. 765 [242 P. 918]." It can be argued, therefore, that the trier of fact, believing neither the plaintiff when she testified that she was not the client of any of the defendants before the retainer contract was entered into, nor the defendants' version of what the facts were, other than that the plaintiff had for three days been the client of the defendant Hempstead, could have concluded that the defendants failed to overcome the presumption that they had taken advantage of their client in securing her signature to the retainer contract. We shall not pause to weigh this argument, nor to assay the evidence in its light. To find support for the judgment in the failure of the defendants, if they did fail, to prove fully facts of whose need they were not made aware by a hint in the pleadings or by any claim of the plaintiff at the trial, would be a miscarriage of justice. Those permitted to practice law in this state have standards set for their conduct. Those standards are set high and must be kept so. Before they can be penalized for a failure to live up to those standards attorneys should, however, be given their day in court. In an action which they do not bring, but in which they appear as defendants, they should not have judgment go against them because of their failure satisfactorily to prove a fact not in question.

For the reasons given, the judgment is reversed. The appeal from the order denying a new trial is dismissed.

Desmond, P. J., Shinn, J., and Bishop, J. pro tem., concurred.