[Civ. No. 21890. Second Dist., Div. One. Nov. 28, 1956.]

N. E. YOUNGBLOOD, Respondent, v. ROBERT C. HIGGINS, Appellant.

Simon, Brown & Arnold, Simon & Brown and Merrill Brown for Appellant.

N. E. Youngblood, in pro. per., for Respondent.

FOURT, J.—This is an appeal by the defendant from a judgment in favor of the plaintiff in an action based upon a written fee agreement.

Appellant, who is in the construction business in the Palm Springs area, conferred with the respondent, who is and was an attorney at law, with reference to a controversy between appellant and Mary K. and Adolph Bremer, Jr., over a building contract. Appellant and respondent thereupon entered into a written contract of employment on a contingent fee basis. The contract is set forth in full in the footnote hereto.[1]

[1] "Mr. Robert C. Higgins,
Palm Springs, California,

Re: Higgins vs. Bremer.

"My dear Mr. Higgins:

"In accordance with our verbal agreement it is my understanding and it is our agreement that I shall represent you in an action upon a written

Pursuant to the contract, appellant paid respondent $500, but failed to pay anything further. The respondent instituted an action against the Bremers on behalf of appellant and prepared, filed and caused to be served upon the Bremers copies of the proper pleadings and documents. The respondent advised the appellant not to discuss the case with the Bremers. However, appellant did not follow this advice, and without consulting the respondent, entered into another contract with the Bremers. Respondent first learned of the latter agreement some twelve days after its execution, and thereafter respondent made several calls and wrote several

contract dated March 20, 1954 with Adolph Bremer, Jr. and Mary K. Bremer, husband and wife, under the terms of which you were to construct five buildings on designated land adjacent to Highway 111, Palm Springs, California, for the total sum of $77,500.00.

''From information derived by me from you it is my understanding that concurrently with the execution of this building construction contract you received from Adolph Bremer, Jr. a check payable to your order in the sum of $5000.00 dated March 20, 1954 and drawn upon the Commercial State Bank, St. Paul, Minnesota, which check was deposited by you for bank clearance, and upon submission to the Commercial State Bank was returned marked 'Payment Stopped.'

''As explained to you, by reason of the fact this contract was entered into in Palm Springs it will be necessary that action thereon be filed in the Superior Court in Riverside, California. You shall have sole determination of any offer of settlement made by the defendants herein, upon which I, of course, will give to you my recommendations.

''Although the contract provides that if owner fails to pay any sum in full when due and payable, owner promises to pay in addition all costs of collection and reasonable attorney's fees incurred by you, whether or not suit be instituted, my fees in this connection will be a retainer or $500.00, payable forthwith, plus a sum equivalent to thirty-three and one-third (33⅓%) of the 'gross recovery' (exclusive of attorney's fees allowed), either by settlement or otherwise.

''This does not mean that I do not intend to ask that the defendants pay fees on this obligation, but it does mean that whatever they are ordered to pay will be credited against whatever is due me under the above formula and you will be required to make up the difference, if any. You are to advance and pay any and all court costs and expenses as they become necessary from time to time.

''It is also understood and agreed that I shall have a lien against said cause of action, settlement, judgment, amount due, to be paid or to become due for my fees, and any and all costs and expenses advanced by me.

''In the event this corresponds with your understanding of our agreement please sign the original of this letter, return it to me for my files, and we shall proceed accordingly.

Very truly yours,
/s/ N. E. Youngblood

''Read and approved:
/s/ Robert C. Higgins
Robert C. Higgins
NEY:LC''

letters in an attempt to protect the interests of the appellant under the agreement.

Two months later, and again without the knowledge of respondent, appellant executed a new and further agreement with the Bremers involving construction of buildings on the same premises to which the prior dispute had related. The latter contract called for a profit to the appellant of 10 per cent of the basic cost of the construction, plus costs of extras installed. The basic cost was $90,880.27, plus $2,433.34 extras, or a total of $93,313.61.

After the construction was completed, appellant again became involved in a dispute with the Bremers involving the amounts due to him.

The respondent brought the instant action in three counts, one on the contingent fee contract and two common counts. Judgment was rendered in favor of the respondent in an amount equal to one-third of 10 per cent of $93,313.61.

Appellant contends that there was a conversation with the respondent upon the execution of the contingent fee contract, in which it was agreed that in the event the contemplated action against the landowner was settled prior to the trial by completing the first contract, the $500 paid would be full payment. The trial court found against the appellant on that contention, upon conflicting evidence. Conflicts of the evidence are to be weighed and to be determined by the trial court, and in this instance there was ample evidence to sustain the findings.

Appellant further contends, in substance, that the contingent fee contract was not fair and equitable. Whether a contingent fee contract is unconscionable is to be determined from the facts and situation as it appeared to the parties at the time the contract was entered into, and not as later developments may unfold. (*Swanson* v. *Hempstead*, 64 Cal.App.2d 681, 688 [149 P.2d 404].) Furthermore, a fee agreement negotiated, made and entered into before the time an attorney undertakes to represent the client is not excessive merely because the fee is to be $500 plus one-third of the gross recovery. (*Swanson* v. *Hempstead, supra.*)

Appellant asserts that if the respondent was to recover anything under the contract it was necessarily limited to one-third of the net fee derived from the second contract, not the gross fee. In this particular case the appellant himself brought about a large part of the difficulty in proceeding as he did. He attempted to settle his own case without the

knowledge or consent of the respondent—and the appellant himself testified that his new contract with the Bremers, which "settled his controversy with the landowner" called for a profit to himself of ten per cent of $93,313.61. The new contract was the result of respondent's efforts in appellant's behalf, and therefore the respondent was entitled to one-third of the "gross recovery," either by settlement or otherwise, namely, one-third of $9,331.36, or $3,110.45. The position the appellant found himself in was specially created and made for him by no one other than himself. He is, of course, estopped from raising the issues attempted in bar of the respondent's recovery. (*Safway Steel Products, Inc.* v. *Lefever,* 117 Cal.App.2d 489, 491 [256 P.2d 32] ; *Merry* v. *Garibaldi,* 48 Cal.App.2d 397, 401 [119 P.2d 768].)

The trial court apparently made an error in the mathematical calculation since the judgment should have been for the sum of $3,110.45, rather than the sum of $3,112.03. The judgment is modified to read as follows: "that plaintiff have and recover judgment against the defendant, ROBERT C. HIGGINS, for the sum of $3,110.45, together with interest thereon at the rate of 7% per annum from and after August 29, 1955, and for the further and additional sum of $113.93, together with interest thereon at the rate of 7% per annum from and after April 14, 1954, together with costs herein amounting to the sum of $116.70." As so modified the judgment is affirmed, the respondent to recover his costs on appeal.

Doran, Acting P. J., and Nourse (Paul), J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 23, 1957.

---

*Assigned by Chairman of Judicial Council.