[S. F. No. 20229. In Bank. Jan. 16, 1962.]

ABRAHAM SETZER, Plaintiff and Appellant, v. PARKER
LEE ROBINSON, Defendant and Respondent.

Abraham Setzer, in pro. per., and Leo R. Friedman for Plaintiff and Appellant.

Rockwell & Fulkerson and John L. Rockwell for Defendant and Respondent.

DOOLING, J.—Plaintiff, an attorney at law, brought this action to enforce a contingent fee agreement with defendant for legal services rendered and for satisfaction of the lien thereby created against defendant's property. Defendant cross-complained to quiet his title against plaintiff's alleged lien. The trial court concluded that the agreement was void and gave judgment for defendant, quieting his title on his cross-complaint. Plaintiff appeals, claiming that the evidence was insufficient to support the findings and judgment.

Defendant and his stepmother owned in joint tenancy two adjoining lots in The Cascades, Fairfax, Marin County. One lot cost $600, and the other $400; and defendant built a small house costing about $1,000 on one of the lots. In March 1947 defendant agreed in writing with his stepbrother that if defendant survived his stepmother, he would deed the two lots to his stepbrother, reserving to himself a life estate, and the stepbrother would keep the house in repair and do certain other things. About a month later the parties signed a memorandum confirming their previous agreement. The stepmother died soon thereafter.

On April 17, 1950, at the suggestion of a fellow employee defendant went to plaintiff's office to consult with plaintiff concerning his rights in the property in the face of the two agreements which he had entered into with his stepbrother. At that time defendant outlined the situation to plaintiff and left copies of the two agreements with plaintiff for the purpose, according to plaintiff's testimony, of plaintiff giving his thought and consideration to them "and also to determine at his [defendant's] request the basis upon which I [plaintiff] could undertake the matter." On April 20, 1950, plaintiff sent a letter to defendant in which he informed defendant that he would represent him in the matter for a $500 retainer fee and a reasonable fee for his services. Defendant advised plaintiff that he was unable to arrange for a retainer of $500 but could procure a retainer of $250; and after further negotiations the parties agreed orally to an arrangement for a $250 retainer and a one-third contingent fee, with the $250 retainer to be included in calculating the one-third. Defend-

ant told plaintiff that he would have to procure the $250 and left with the understanding that plaintiff would in the meantime proceed as far as he could; and thereafter plaintiff did some preliminary work, including the procuring of a certified copy of the stepmother's death certificate. On May 9, 1950, plaintiff sent another letter to defendant enclosing a certified copy of the death certificate and adding: "As soon as you have the retainer, come in with it and I shall execute the agreement I have prepared." On May 19, 1950, defendant, who had redeemed certain savings bonds, called at plaintiff's office with a U.S. Treasury check for $274.50 (the proceeds of the bonds) and delivered this check to plaintiff, and plaintiff gave defendant the difference between the $274.50 check and $250. On May 23, 1950, defendant called again at plaintiff's office and the contingent fee agreement which had been prepared by plaintiff was signed.

Only after the contingent fee agreement was executed did plaintiff proceed to commence proceedings to establish the stepmother's death and the termination of the joint tenancy, and to prepare and file a complaint against the stepbrother to set aside defendant's agreements with the stepbrother and quiet defendant's title to the property. As it developed the stepbrother decided not to contest defendant's action against him and judgment was taken quieting defendant's title against the stepbrother by default.

After extended unsuccessful efforts by plaintiff to collect his contingent fee from defendant by mutual arrangement plaintiff finally commenced the instant action to enforce the contingent fee agreement. The trial court held the contingent fee agreement void on two grounds: 1. That there was a relationship of attorney and client between the parties at the time the contingent fee agreement was executed, and plaintiff did not rebut the presumption of undue influence created by Civil Code, section 2235;[1] and 2. that at the time defendant entered into the agreement "he was incompetent to transact business, or otherwise properly conduct business affairs."

We are satisfied that there is no substantial evidence to support the judgment on either ground. The presumption of "insufficient consideration" and "undue influence" created by Civil Code, section 2235, is not applicable to a

---

[1]Section 2235: "All transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration, and under undue influence."

contract by which the relation of attorney and client is originally created and the attorney's compensation is fixed. ''The confidential relation does not exist until such contract is made and in agreeing upon its terms the parties deal at arm's length.'' (*Cooley* v. *Miller & Lux,* 156 Cal. 510, 524 [105 P. 981].; see also *Cooley* v. *Miller & Lux,* 168 Cal. 120, 131 [142 P. 83] ; *Youngblood* v. *Higgins,* 146 Cal.App.2d 350, 352 [303 P.2d 637] ; 5 Am. Jur., Attorneys at Law, § 189, p. 375.)

██ The evidence, which we have summarized at some length above, can only bear one reasonable construction and that is that plaintiff did not agree or undertake to act as defendant's attorney until the agreement for a fee had been arrived at between them. That plaintiff told the defendant that it would be necessary to carry out two proceedings, one to establish the fact of his stepmother's death and the other to quiet his title against his stepbrother's claim, did not result in the creation of the attorney-client relationship in view of the fact that plaintiff made it clear to defendant that he would only undertake to act for him in these matters when an agreement for his fee had been reached. ██ No attorney could safely or reasonably negotiate any fee agreement with a prospective client without some preliminary investigation of the facts of the case and a disclosure to the prospective client of the legal steps which in his judgment must be taken. If by the very fact of such investigation and disclosure the relationship of attorney and client would thereby be created, the attorney would be placed in the impossible position of becoming the prospective client's attorney while he was attempting to reach an agreement with him as to whether he should become his attorney or not.

██ Nor is there any substantial evidence to support the finding that at the time the agreement was entered into defendant was incompetent to transact business. True, the evidence showed that defendant had not been a great financial success. At the time the fee agreement was entered into he was employed in a minor position at $37.50 per week after spending his adult life with the same employer; but that falls far short of proof that he was legally incompetent to enter into a contract. Counsel points to the fact that plaintiff wrote a letter to defendant advising him not to discuss with anyone his difficulties with his stepbrother; but the giving of such advice neither tends to establish defendant's incompetency nor to establish that plaintiff considered defendant incompetent. Counsel also points to the fact that plaintiff in his

fee contract with defendant recited the fact that when defendant entered into his agreements with his stepbrother, defendant was incompetent; but that is explained by the fact that defendant told plaintiff that when he entered into those agreements he was intoxicated. Finally counsel argues that the trial judge could determine defendant's lack of competency from his demeanor on the witness stand. The transcript of defendant's testimony does not give any evidence of incompetency; but in any event the trial occurred over eight years after the execution of the fee agreement and defendant's demeanor in court in 1959 standing alone would have no probative value in determining his competency to contract in 1950.

■ While a contingent fee agreement may be so unconscionable that a court will refuse to enforce it, this contract cannot be held to be of that character. Contingent fee contracts for one-third of the recovery have frequently been upheld; and while the stepbrother in this case defaulted the parties could not tell in advance that he would do so, and plaintiff's legal services might well have included a contested trial and a possible appeal. ■ The reasonableness of a contingent fee is to be judged not by hindsight but by the "situation as it appeared to the parties at the time the contract was entered into." (*Youngblood* v. *Higgins, supra,* 146 Cal.App.2d 350, 352; see also *Estate of Raphael,* 103 Cal. App.2d 792, 797 [230 P.2d 436] ; *Swanson* v. *Hempstead,* 64 Cal.App.2d 681, 688 [149 P.2d 404].)

■ The contract provides for a fee of one-third of the recovery. Since the only claim of the stepbrother was to a remainder following a life estate in defendant, the one-third fee is not to be measured by the value of the property but by the value of the remainder interest provided for in the agreements with the stepbrother.

Judgment reversed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and White, J., concurred.