[Civ. No. 30234. Second Dist., Div. Five. Dec. 12, 1967.]

ARNOLD J. PROVISOR, Plaintiff and Appellant, v. HAAS REALTY, INC. et al., Defendants and Respondents.

Milton Zerin and Morton Minikes for Plaintiff and Appellant.

Edward Clayton Jones for Defendants and Respondents.

HUFSTEDLER, J.—Plaintiff, a licensed attorney, appeals from a judgment in favor of defendant Haas Realty, Inc. (''Haas''), in his action to recover, as alleged compensation for legal services, a share of the broker's commission which Haas earned on the sale of real property to Public Service Housing Corp. (''Housing Corp.''). No appeal has been taken from the portions of the judgment in favor of defendants Blaine and Beeson.

Plaintiff's claim rests upon two oral agreements, each confirmed by a written memorandum, dated respectively December 3, 1963, and January 2, 196[4].[1] The first memorandum stated: ''This will confirm our understanding with regard to the sale of the Edison property on Ave. 21. You are to receive one-half of our commission on said sale should it be completed. This is to be paid in consideration of your part in the negotiations.'' (Signed for Haas Realty Co. by Richard J. Beeson.) The second memorandum stated: ''This will confirm our arrangement for the commission on the sale of the Edison property to Public Service Housing Corp. Haas Realty is to receive a commission of $5,600.00 on the sale and you are to receive the balance of said commission as per the terms of the sale.'' (Signed for Haas Realty Co. by Richard J. Beeson.)

The agreement by Haas, a licensed real estate broker, to split its commission with plaintiff, who was not licensed as a broker or salesman, is illegal by the terms of section 10137 of the Business and Professions Code, unless the agreement is excepted from section 10137 by section 10133 of the Business and Professions Code.

Section 10137 of the Business and Professions Code provides in pertinent part: ''It is unlawful for any licensed real estate broker to employ or compensate, directly or indirectly, any person for performing any of the acts within the scope of this chapter who is not a licensed real estate broker, or a real estate salesman licensed under the broker employing or compensating him. . . . For a violation of any of the provisions of this section, the commissioner may temporarily suspend or permanently revoke the license of the real estate licensee . . .''

Section 10133 of the Business and Professions Code provides in pertinent part: ''The definitions of a real estate broker and a real estate salesman as set forth in Sections 10131 and 10132, do not include the following: . . . (c) Serv-

---

[1] The parties agree that the memorandum was mistakenly dated and that the correct date was January 2, 1964.

ices rendered by an attorney at law in performing his duties as such attorney at law.''

The trial court found: (1) ''During the period in which Public Service Housing Corp. was engaged in negotiations with defendant Haas Realty, Inc., relative to the purchase of the subject realty, plaintiff did participate in such negotiations for and on behalf of Public Service Housing Corp.''; (2) The share of the real estate commission ''allocated to plaintiff was to be in consideration for his participation in the negotiations leading up to and culminating in the consummation of such sale''; (3) ''Plaintiff did not . . . render any services to Public Service Housing Corp., Southern California Edison Company, or any of the defendants, in the course of performing plaintiff's duties as an attorney at law, for which defendants, or any of them, promised or agreed, . . . to pay . . . plaintiff''; and (4) ''Plaintiff has not rendered any legal services or other services in the course of performing his duties as an attorney at law, to defendants or to any other party, for which defendants agreed to compensate plaintiff . . .''

On appeal plaintiff contends that the services for which Haas agreed to compensate plaintiff were legal services rendered by him in his capacity as an attorney and that for such services he was not required to have a broker's license. Plaintiff argues that the evidence was insufficient to support the trial court's findings that Haas did not agree to pay him for his legal services and that there is a conflict between the findings herein numbered (1) and (2) and those numbered (3) and (4). Haas urges that the evidence was sufficient to support the trial court's findings and that there is no conflict between the findings because Haas agreed to pay plaintiff not for his legal services rendered to the buyers, but for his nonlegal services rendered to Haas.

### Summary of the Evidence

Haas, a licensed real estate broker, was employed by Southern California Edison Company (''Edison'') to sell a parcel of its real property for $425,000. Defendants Beeson and Blaine, respectively licensed as a real estate salesman and a broker, were employed by Haas and acted for Haas during the transactions in issue.

In November 1963 Beeson showed the Edison property to Messrs. Weitzman and Bloom, who together owned all of the stock of Housing Corp. Weitzman expressed interest in the

property, but explained to Beeson that before he went any further, he wanted plaintiff, his lawyer, to check out the property. At Weitzman's request plaintiff examined the property and commenced negotiations concerning the property with Edison representatives and with Beeson.

On December 4, 1963, plaintiff, Beeson, Weitzman and Bloom held a conference. Plaintiff, Beeson and Weitzman each gave different versions of the substance of the conversations which took place at the conference. Plaintiff testified that he told Beeson that if Beeson wanted him to ''spend the time to go through this,'' he wanted Haas ''to pay the fee''; that if Messrs. Weitzman and Bloom bought the property, ''Mr. Weitzman would then owe me any moneys for this transaction for the work that I was going to do,'' and that ''if Mr. Weitzman and Mr. Bloom did not purchase the property, that I still expected to be paid, and that I would expect Mr. Weitzman to pay me and Mr. Bloom to pay me. Mr. Weitzman said he would be willing to do that because he wanted me to go forward with his investigation . . .'' Weitzman testified that the substance of the conversation was ''that if I bought the property they [Haas] would pay the fee, the attorney's fee. If I didn't buy the property, Public Service would pay the fee.'' Beeson testified that nothing was ever said about paying plaintiff for legal services he rendered or would render to Weitzman, Bloom, or Housing Corp. and that nothing was said about Weitzman, Bloom or Housing Corp. paying a fee to plaintiff if the sale were not consummated.

At the conference held on December 4, 1963, Weitzman executed a deposit receipt on behalf of Housing Corp., offering to buy the Edison property for $325,000. The deposit receipt was dated December 4, 1963. On the same day, the first memorandum was prepared and at plaintiff's request the memorandum was dated back to December 3.

Plaintiff's counsel showed Beeson a copy of the first memorandum and asked Beeson if he had a distinct recollection that the memorandum was not drawn on the date it bore. Beeson replied, ''Absolutely.'' The following colloquy then occurred: ''Q What makes you so certain about that, sir? A Because the pressure they put on me that they would not sign that deposit receipt until I signed this, giving him half the commission. Q Now, sir. who made that statement to you? A Mr. Provisor. . . . Q What did he say to you? A He said, 'That's the way it is going to be, I get half the commission or else.' Q Or else what? A Or else he is gong to blow the

deal." At the conclusion of that conversation Beeson signed the memorandum typed by the plaintiff.

Edison rejected the initial offer in mid-December and made a counteroffer to sell the property for $320,000 "net to Edison," meaning that the price to Housing Corp. was to be that sum plus the brokerage fee. The counteroffer was not acceptable to the buyers. Beeson asked Edison if it would accept $335,000 gross, and Edison indicated that it would sell at that price. Beeson reported his conversation with the Edison principals to plaintiff, Bloom and Weitzman, and plaintiff said, "I would pay it." Beeson thereupon prepared the escrow papers and delivered them to Weitzman and Bloom on December 20, 1963.

On January 2, 1964, a meeting took place among plaintiff, Weitzman, Bloom and Beeson at plaintiff's request. Plaintiff said "that he wanted more commission than the original agreement, that he was going to have to do a lot of work for Public Service Housing Corp. and he wanted a bigger split of the commission." Beeson told plaintiff that his demand for more money was unacceptable, but that he would call the Haas office about the matter. Beeson telephoned Blaine and told him about plaintiff's demand for an increased share of the commission. Plaintiff then took the telephone, telling Blaine that he wanted the increased share "for negotiating for the principals" and that "if he didn't get the commission as he stated to Mr. Blaine, he was going to blow the deal." Blaine told plaintiff that "it was up to Mr. Beeson if he was willing to share his particular commission with another broker." At the conclusion of the telephone conversation Beeson agreed to meet the plaintiff's demands. Plaintiff drafted and typed the second memorandum and Beeson signed it.

In March 1964 plaintiff telephoned Beeson telling him that he wanted "his share of the commission put into the escrow instructions." Blaine thereafter talked to plaintiff and asked him the number of his broker's license to be put into the escrow instructions. Plaintiff replied that he had no broker's license. Haas's president thereafter consulted an attorney to find out if it could legally pay plaintiff a share of the commission. Haas refused to pay plaintiff a share of the commission, and this action followed.

### Fee-Splitting Contract Illegal

Section 10137 of the Business and Professions Code expressly forbids payment by a licensed real estate broker to

any person who is not licensed as a broker or salesman for performing any of the acts within the scope of the chapter regulating real estate transactions. Plaintiff was not licensed as a broker or a salesman. Plaintiff's agreement with Haas is therefore illegal unless the broker was compensating plaintiff solely for legal services he rendered to his client and for his client's benefit.

A lawyer cannot recover a share of a real estate broker's commission if the compensation is not paid to him solely for services rendered in his capacity as a lawyer. In *Haas* v. *Greenwald* (1925) 196 Cal. 236 [237 P. 38, 59 A.L.R. 1493], the Supreme Court held that a complaint to recover brokerage fees, brought by a licensed broker on his own behalf and as an assignee of a lawyer unlicensed as a broker, did not state a cause of action because the complaint did not aver that the lawyer's services were performed by him in his capacity as a lawyer. (See also *Estate of Prieto* (1966) 243 Cal.App.2d 79 [52 Cal.Rptr. 80].)

. Cases outside of California in states with licensing statutes virtually identical to ours have denied recovery of commissions to lawyers whose services were not performed strictly in their capacity as lawyers.

*Tobin* v. *Courshon* (Fla. Supreme Ct. 1963) 155 So.2d 785 [99 A.L.R.2d 1147], was an action by Florida attorneys, unlicensed as real estate brokers, to recover one-third of the real estate commission received by the defendant, a licensed broker, for their services rendered in investigating and locating land for a prospective buyer. The attorneys averred that they had been retained by the ultimate purchaser to locate land meeting a particular description. The purchaser did not undertake to pay the lawyers for their services, but simply authorized them to obtain compensation for their services by a commission to be paid by the seller of the property, or to obtain compensation by acquiring a share of the commission of the real estate broker with whom they cooperated in bringing about the sale. The court said: "The narrow avenue through which the lawyer, not licensed as a real estate broker or salesman, may enter the ambit of the real estate broker or salesman is the one of duty owed by him in the relationship of client and attorney.

"Curiously enough, in the present case the so-called client was not binding himself to pay for the services but was trying to fasten that obligation on the seller, with whom he would ultimately deal, or the broker who would be remunerated by

the seller.'' (155 So.2d at p. 787.) The court held the agreement to split the broker's commission was illegal.

A similar result was reached in *Krause* v. *Boraks* (1954) 341 Mich. 149, 67 N.W.2d 202. The plaintiff attorney was the purchaser's lawyer, but he was not the lawyer for the brokers representing the sellers. The broker orally promised the plaintiff to pay him one-half of any commission he received if the plaintiff could find purchasers for the property. The court held that the oral contract for splitting the broker's fee was illegal; the statute exempting lawyers from the licensing requirements applied only to the services of a lawyer rendered in his capacity as a lawyer. The lawyer was acting as a real estate broker in this case.

Haas obviously did not agree to pay plaintiff for the services plaintiff rendered in his own behalf in negotiating his fee arrangement, and those services cannot be considered as legal services which plaintiff performed for his clients. (See *Setzer* v. *Robinson* (1962) 57 Cal.2d 213, 217 [18 Cal.Rptr. 524, 368 P.2d 124] ; *Bradner* v. *Vasquez* (1954) 43 Cal.2d 147, 151 [272 P.2d 11].)

Plaintiff does not contend that he performed any legal services for Haas. The broker was not his client. The sole legal services plaintiff performed must necessarily have been for his clients, the buyers. That the legal services he rendered to his clients may have incidentally benefited the broker because the buyers would not have purchased the property without the services plaintiff rendered to the buyers does not convert the services rendered to his clients into legal services rendered to the broker. (*Meehan* v. *Hopps* (1956) 144 Cal.App.2d 284, 293 [301 P.2d 10].)

The trial court found that Haas did not agree to pay plaintiff for any legal services which he may have performed. That finding is supported by substantial evidence. The court could have believed Beeson's testimony that Haas agreed to share its commission with the plaintiff in exchange for plaintiff's forbearance in ''blowing the deal.'' Plaintiff's forbearance to frustrate the sale cannot possibly be characterized as the performance of legal services by plaintiff in his capacity as a lawyer. The trial court's findings that plaintiff was being compensated for ''negotiations leading up to and culminating in the consummation of such sale'' are not inconsistent with its findings that Haas did not agree to pay plaintiff for legal services. The court could properly conclude that plaintiff's forbearance was part of the negotiations, although such for-

bearance was not the performance of legal services for plaintiff's clients, the buyers.

 Plaintiff denied that he ever said he would ''blow the deal,'' but it is elementary that the resolution of conflicts in the evidence is solely the province of the trial court.

The judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied January 4, 1968, and appellant's petition for a hearing by the Supreme Court was denied February 8, 1968.