Juanita H. BLOUNT, Appellant,

v.

**WESTINGHOUSE CREDIT CORPORA-TION, Appellee.**

No. 17110.

Court of Civil Appeals of Texas.

Dallas.

July 5, 1968.

Rehearing Denied Sept. 27, 1968.

D. Samuel Coats, of Clark, West, Keller, Clark & Ginsberg, Dallas, for appellant.

Don W. Davis, of Irion, Cain, Cocke, Magee & Davis, Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

Westinghouse Credit Corporation (hereinafter called Westinghouse) brought this action to recover the balance owing it upon four promissory notes and seven retail installment contracts against J & D Factory Outlet Mobile Homes, Inc. (hereinafter called J & D), the principal obligor of such notes and contracts, and Juanita H. Blount and J. F. Toner, as individual guarantors. Defendants J & D and Toner were subsequently dismissed from the action and plaintiff's motion for summary judgment against defendant Juanita H. Blount was sustained. Judgment was rendered for Westinghouse against Juanita H. Blount. She appeals. We affirm.

The sole basis of liability of appellant Juanita H. Blount is a written guaranty agreement dated September 21, 1965 and given by her to Westinghouse to secure the extension of credit and financing by Westinghouse to J & D. The guaranty agreement, being the critical instrument involved in this appeal, is here copied verbatim:

"GUARANTY

Westinghouse Credit Corporation
933 Penn Avenue
Pittsburgh 22, Pennsylvania

Re: J & D Factory Outlet
Mobile Homes, Inc.
Obligor
2862 Ft. Worth Avenue
No. & Street
Dallas, Texas
City & State

Gentlemen:

In consideration of your entering into an arrangement with the party named above, hereinafter called 'Obligor', by which you may purchase or otherwise acquire from, and/or enter into with, Obligor promissory notes,

conditional sale contracts, chattel mortgages, trust receipts, leases, and/or other evidences of indebtedness or choses or action hereinafter called 'Contracts', arising out of wholesale and/or retail transactions by or with Obligor, the undersigned and each of them do absolutely and unconditionally guarantee to you and your affiliated and subsidiary companies the full, faithful and prompt performance, payment and discharge of any and all obligations and agreements of Obligor under or with respect to any and all such Contracts and any and all other agreements (whether by way of guaranty or otherwise) of Obligor with you or your affiliates or subsidiary companies now in force or hereafter made.

Notice of acceptance of this Guaranty is hereby waived. Presentment, protest and demand, and notice of protest and demand of any and all Contracts are hereby waived. Any rights to extension, composition or otherwise under the Bankruptcy Act or any amendments thereof, or under any state or other federal statute are hereby waived. Extensions of the times of payment and/or renewals of Contracts, and extensions of the times of performance of agreements of Obligor, or any other compromises, adjustments, or indulgences may be granted without notice to undersigned.

Failure by you to insist upon strict performance or observance of any of the terms, provisions and covenants of any Contract or agreement or to exercise any right therein contained shall not be construed as a waiver or relinquishment for the future of any term, provision or covenant thereof, but, as to the undersigned, the same shall continue and remain in full force and effect. Receipt by you of payment or payments with knowledge of the breach of any provision of any Contract or agreement shall not, as to the undersigned, be deemed a waiver of such breach.

The liability of the undersigned under this Guaranty shall be primary and in any right of action which shall accrue to you under any Contract or agreement, you may, at your option, proceed against the undersigned, jointly or severally, together with Obligor, or may proceed against the undersigned, jointly or severally, without having commenced any action against or having obtained any judgment against Obligor or any other party liable with respect thereto. If any claim against undersigned hereunder is referred to an attorney for collection, then undersigned shall pay 15% of the amount thereof as an attorney's reasonable fee.

This Guaranty may be terminated by the undersigned by serving ten (10) days written notice upon you, but as to all Contracts purchased or acquired and all obligations of Obligor, contingent or absolute, incurred up to the effective date of such notice, this Guaranty shall be continuing and unconditional until the same are fully paid, performed or discharged. The Guaranty shall not be discharged or affected by the death of any of the undersigned, but shall bind their respective heirs, executors, administrators and assigns, and the benefits thereof shall extend to and include the successors and assigns of Corporation.

Dated this 21st day of September, 1965.

WITNESS OR ATTEST:

/s/   Juanita H. Blount                           (SEAL)

Address   2862 Ft. Worth Ave., Dallas, Texas

By   /s/ Juanita H. Blount
　　　　Title                                            ,,

At some date subsequent to the execution of the guaranty agreement J & D, acting through its Secretary-Treasurer, J. F. Toner, executed and delivered to Westinghouse an instrument designated "Mobile Home Dealer Repurchase Agreement". By the terms of this instrument Westinghouse agreed to purchase from J & D retail contracts covering mobile homes sold by J & D. It was therein specifically agreed that upon default by the purchaser of any such mobile home, and the repossession thereof by Westinghouse, J & D would repurchase each of such repossessed mobile homes for the unpaid balance of the sales contract, plus certain designated costs. The effective date of such agreement was October 1, 1965.

It is undisputed that the promissory notes made the basis of a part of Westinghouse's claim were executed following the guaranty agreement and also that the remaining portion of the appellee's claim flowed from the failure on the part of J & D to comply with the repurchase agreement above referred to.

Appellant contends, in her first point of error, that her guaranty agreement did not extend to and cover the claims asserted by Westinghouse pursuant to the repurchase agreement and that such agreement, which was made without her knowledge and consent, had constituted such a material alteration in the contractual relationship between her and Westinghouse that her obligation as guarantor became discharged.

■ In Southwest Savings Ass'n v. Dunagan, 392 S.W.2d 761 (Tex.Civ.App., Dallas 1965, writ ref'd n. r. e.), we had occasion to review the authorities relating to guaranty contracts, and there reiterated the well established rule that a guarantor, often called a favorite of the law, is obligated only in respect of the very contractual agreement of the obligee and principal obligor and any material alteration of such guaranty agreement is generally held to have the effect of completely discharging the guarantor's undertaking. The rule of *strictissimi juris* is to be applied in construing guaranty contracts.

In the light of these well recognized rules of construction the principal question advanced by this appeal is whether the obligations imposed upon J & D, the principal obligor, by the repurchase agreement effective October 1, 1965, were comprehended by and included in the basic guaranty agreement executed by appellant on the 21st day of September, 1965. The question presented is one of law and since neither party contends that the guaranty agreement is ambiguous we must carefully analyze the entire instrument to arrive at a correct determination of the intention of the parties thereto.

■ The instrument is explicit in its provisions that appellant "absolutely and unconditionally" guarantees payment and discharge of "promissory notes, conditional sale contracts, chattel mortgages, trust receipts, leases, and/or *other evidences of indebtedness or choses or action* hereinafter called 'Contracts', *arising out of wholesale and/or retail transactions by or with Obligor * * *.*" It covers *"any and all obligations and agreements of Obligor under or with respect to any and all such Contracts and any and all other agreements* (whether by way of guaranty or otherwise) of Obligor with you or your affiliates or subsidiary companies *now in force or hereafter made."* It provides for termination upon written notice "but as to all Contracts purchased or acquired and all obligations of Obligor, contingent or absolute, incurred up to the effective date of such notice, *this Guaranty shall be continuing and unconditional until the same are fully paid, performed or discharged."* (Emphasis supplied.) It is quite apparent to us that while the agreement is rather broad and comprehensive yet it expressly provides potential liability for any and all obligations and agreements with respect to wholesale or retail transactions whether the same be presently in existence or be hereafter made. We know of no prohibition in law which would prevent parties

from contracting that the guarantor shall be liable for all liability of the principal, whenever arising. The wording of the instrument itself clearly comprehends the intent on the part of the guarantor, appellant herein, to guarantee present and future indebtedness of the obligor so long as such indebtednesses were those generally incurred within the usual scope of business of J & D.

The situation is classically illustrated in the case of Cooper Grocery Co. v. Neblett, 221 S.W. 963 (Tex.Comm'n App.1920), in which the court commented upon the identical theory of release now advanced by appellant. The court there held that certain notes and obligations claimed to have deviated from the terms of the original guaranty agreement were certainly comprehended in the terms of the guaranty which specifically covered future indebtednesses.

We think that the guaranty agreement in this case falls within the category of a "continuing guaranty", defined as follows:

"A continuing guaranty is one which is not limited to a single transaction, but which contemplates a future course of dealing, covering a series of transactions, generally for an indefinite time or until revoked. It is prospective in its operation and is generally intended to provide security with respect to future transactions, within certain limits, and contemplates a succession of liabilities, for which, as they accrue, the guarantor becomes liable." 38 C.J.S. Guaranty § 7, p. 1142.

See also 38 Am.Jur.2d, Guaranty, § 23, p. 1023.

This court, in McGhee v. Wynnewood State Bank, 297 S.W.2d 876 (Tex.Civ.App., Dallas 1956, writ ref'd n. r. e.), discussed the question of continuing guaranties and held that such guaranty, similar to the one here in question, was effective and legally binding as being reasonably contemplated by the parties in their original agreement.

The instrument here under consideration clearly reveals the intent of the parties to be that subsequent sales contracts, such as the repurchase agreement, should be included in the category of future indebtednesses guaranteed by appellant. Therefore, such indebtedness created during the time the guaranty agreement was in effect was not such a deviation of the original agreement as would amount to a release on the part of the guarantor of her basic obligation. We overrule appellant's point 1.

In her second point of error appellant complains of the granting of the summary judgment "because a verified account between a creditor and debtor which is generally denied by an alleged guarantor is purely hearsay as against such alleged guarantor and cannot serve as the basis of a Summary Judgment for the creditor against the alleged guarantor." The burden of appellant's argument under this point is that since she was not in direct privity to the transactions sued upon the rule relating to proof of verified accounts is not applicable to her. It must be observed that this is not an action upon a verified account but one wherein appellee sued to recover certain obligations covered by a guaranty agreement. The record reveals that appellee, in support of its motion for summary judgment, attached and offered "summary judgment evidence" in the form of affidavits and depositions, all of which clearly supported appellee's cause of action. Appellant filed a general denial to appellee's pleadings but filed no controverting affidavits or other counter-summary judgment evidence. While we fully recognize the rules of law asserted by appellant concerning suits on verified accounts yet we do not think the same are applicable here.

In summary judgment proceedings a genuine issue of material fact is not raised by mere allegations in pleadings when they are controverted by affidavits

and other summary judgment evidence. In such a situation the adverse party must come forward with counter affidavits and other evidence to be considered by the court in arriving at the question of the existence of issuable facts. Cotten v. Republic Nat. Bank, 395 S.W.2d 930 (Tex.Civ.App., Dallas 1965, writ ref'd n. r. e.); McDonald, Texas Civil Practice, Vol. 4 (1967 Cumulative Supp.), § 17.26.3, p. 53.

■ We have carefully tested the summary judgment rendered herein in the light of the applicable rules and having done so we overrule appellant's point 2.

By her third point of error appellant asserts that the summary judgment was improper because "Appellant's pleadings raise a substantial issue of fact as to the fraud of Appellee and others in procuring Appellant's alleged guaranty." In her pleadings appellant said, inter alia, that: "If the signature on the instrument referred to in Plaintiff's First Amended Original Petition as Exhibit 'L' is found to be that of this Defendant, the same was procured by the fraud of the Defendant, J. F. Toner, and Plaintiff, acting through its duly authorized agents and that said instrument is void and of no effect as to this Defendant." Appellant offered no summary judgment evidence of any kind or character to support the general pleadings of alleged fraud.

■ In Turinsky v. Turinsky, 359 S.W.2d 114 (Tex.Civ.App., Dallas 1962), Chief Justice Dixon reiterated the rule that mere pleadings cannot be accepted as proof of their own allegations in summary judgment proceedings. Gulf, C. & S. F. Ry. Co. v. McBride, 159 Tex. 442, 322 S.W.2d 492 (1958); Doneghy v. State, 334 S.W.2d 506 (Tex.Civ.App., Amarillo 1960, writ ref'd n. r. e.).

■ In her deposition Mrs. Blount, a woman having considerable business experience, testified that she signed the guaranty agreement but that she thought it was "more or less a formality." She said that she understood that it was necessary for her to sign the guaranty agreement in order that J & D could secure credit and financing from Westinghouse. She admitted that there was nothing whatsoever to prevent her from studying the instrument or from hiring a lawyer to advise her if she so desired before signing the agreement. She admitted that no one connected with Westinghouse was present at the time she signed the guaranty and that at no time did anyone connected with Westinghouse make any oral agreement or representation to her concerning the writing. The record is devoid of any proof of alleged fraud. In the absence of fraud, misrepresentation or concealment, one who has the capacity to make a contract will be conclusively presumed to have known the purpose of an agreement executed by him and also the meaning and legal effect of the terms used therein. 13 Tex.Jur.2d, Contracts, § 259, p. 484; Bifano v. Econo Builders, Inc., 401 S.W.2d 670 (Tex.Civ.App., Dallas 1966, writ ref'd n. r. e.); and Rough v. Southwestern Bell Telephone Co., 426 S.W.2d 579 (Tex.Civ. App., Dallas 1968, writ ref'd).

Appellant's third point is overruled.

Finally, in her fourth point, appellant says that even assuming appellee's interpretation of the guaranty agreement is correct the same is unconscionable and unenforceable in law. In support of her points she refers to Sec. 2–302 of the Texas Uniform Commercial Code, V.T.C.A., which provides that if the court, as a matter of law, finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce same. An "unconscionable" contract has been defined by courts of other jurisdictions to mean a contract which no man in his senses and not under a delusion would enter into and which no honest and fair person would accept. Swanson v. Hempstead, 64 Cal.App.2d 681, 149 P.2d 404 (1944); Terre Haute Cooperage, Inc. v. Branscome, 203 Miss. 493, 35 So.Sd 537 (1948).

■ An analysis of the guaranty agreement signed by appellant does not compel

the conclusion that same is unconscionable, within the definition recited. There is nothing unusual or out of the ordinary in this age of highly advanced business transactions and commercial negotiations for a lending agency to require another to guarantee the faithful performance of undertakings of a principal obligor. In this instance it is undisputed that J & D possessed no credit rating or worth so that it could not buy, sell and trade mobile homes without the financial assistance of a company such as Westinghouse. By the same token Westinghouse was reluctant to enter into such undertaking with J & D without being assured by someone solvent that it could recoup potential losses which might arise from the business. The guaranty agreement was simply an everyday business transaction between two parties capable of contracting with each other. We cannot say, as a matter of law, that the contract was unconscionable. Appellant's fourth point is overruled.

Finding no reversible error reflected by this record, the judgment of the trial court is affirmed.