[Civ. No. 14550. Third Dist. Oct. 14, 1975.]

GENE G. WALTON, Plaintiff and Appellant, v.
JOSEPH L. BROGLIO et al., Defendants and Respondents.

■■■■■■

**COUNSEL**

Gene G. Walton, in pro. per., for Plaintiff and Appellant.

James E. Deasy for Defendants and Respondents.

**OPINION**

**PARAS, J.**—Plaintiff, an attorney, appeals from a judgment of the Superior Court of Calaveras County cancelling a $7,500 note for attorneys' fees, executed by defendants.

Defendant Joseph Broglio was arrested in San Francisco on July 26, 1972, and indicted for violation of section 523 of the Penal Code: sending threatening letters with intent to extort money. Upon his arrest, Joseph telephoned his wife Angelina and asked her to call Mr. Lucas, an attorney who was then associated with plaintiff, to arrange bail. The Broglios were business clients of the plaintiff's law firm at that time, although they had not met plaintiff himself.

The next day Mr. Lucas advised the Broglios that plaintiff would be handling the case because of his greater expertise in criminal matters and the four of them met together. Plaintiff agreed to represent the Broglios for a fee of $15,000. Although Joseph Broglio testified that he never said "Yes" or "No" to any question as to the matter of fees, it is undisputed that this was the amount stated by plaintiff, and that plaintiff later actually did represent Mr. Broglio on the criminal charge. The Broglios paid $4,000 cash to plaintiff at the first interview on July 27, 1972, and were to bring in the remainder within a few days. When it became apparent that they could not pay the entire fee immediately, plaintiff requested $3,500 more in cash, and a promissory note for $7,500. The note was signed on August 10, 1972; the $3,500 was never paid.

With regard to the note, Mrs. Broglio testified: "I recall that the first time Mr. Walton asked us to sign this note he kind of pushed it over like; so we didn't sign it on that day. I don't recall the days. But then on the second day, which obviously is the 10th of August that we had another conference with him, he asked us to sign, and it was not eagerly. We hesitated, because $15,000 is an awful lot of money; so he was very firm, very kind, but very firm, and he said, 'You've got to sign this, because otherwise I'll not have anything to do with it.' So, scared as we were, a traumatic experience that we were undergoing, what are you going to do? You sign. I don't want my husband to go to jail, and certainly we are going to have an attorney try to do something for us; so I feel truly it was under duress."

In response to his counsel's question, "Did Mr. Walton say that if you did not sign the note he would withdraw from the case and you would be without legal representation," Joseph Broglio testified, "[y]es, something to that effect. I don't recall the exact wording, though. In other words it was something like, either you sign this or else. Something to that effect."

Plaintiff denied that he ever threatened to withdraw from the case if the promissory note was not signed. Moreover, plaintiff testified that at the first meeting, he suggested to Mr. Broglio that perhaps he could obtain other counsel cheaper in San Francisco; and in fact, on one occasion traveled to San Francisco with Mr. Broglio at Mr. Broglio's

request to meet another attorney who had represented Mr. Broglio for several years in business matters. Plaintiff's suggestion that Mr. Broglio retain this other attorney was rejected by both the attorney and Mr. Broglio because, as was subsequently revealed, other litigation had created a conflict of interest between them. This testimony as to the possibility of obtaining other, less expensive counsel, was undisputed.

The Broglios defaulted on the note. After the conclusion of the criminal case (Mr. Broglio pleaded guilty pursuant to a plea bargain, and was placed on probation), plaintiff filed the present action seeking recovery on the note. In doing so, plaintiff testified, he waived the $3,500.

After a court trial, the court ordered the $7,500 promissory note cancelled, found that the $4,000 already paid was a reasonable attorney fee, and accordingly gave judgment for defendants. ■ ■■■ Although neither party requested findings, the basis for the judgment is clear from a letter opinion written by the trial judge to the parties and filed December 27, 1973:[1] "The Court finds that there was a pre-existing attorney-client relationship between Broglio and Walton which does give rise to the presumption of invalidity. (Civ. Code, § 2235.) This has not been met successfully and the fee arrangement must be abrogated and the note cancelled."

■ Plaintiff contends on appeal that the presumption of invalidity codified in section 2235 of the Civil Code does not apply. We agree.

In contracting with his client, where there is a pre-existing attorney-client relationship, the attorney is charged with a rebuttable presumption of undue influence and thus invalidity of the contract. (*Bradner* v. *Vasquez* (1954) 43 Cal.2d 147 [272 P.2d 11]; *Denton* v. *Smith* (1951) 101 Cal.App.2d 841 [226 P.2d 723].) This rule is based upon section 2235 of the Civil Code, which reads as follows: "All transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration, and under undue influence. The presumptions established by this section do not apply to the provisions of an agreement between a trustee and his beneficiary relating to the hiring or compensation of the trustee."

The last sentence was added in 1963. By its terms, it appears broadly to exclude *all* agreements relating to hiring or compensation, including

---

[1]Although a judge's opinion may not be used to contradict the findings or judgment, it is properly used to discover the grounds for a decision, where such grounds are not otherwise stated. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 231, p. 4221.)

those made *after* the fiduciary relationship is established. Prior law had created an exception only where there was no pre-existing fiduciary relationship. Thus, in *Setzer* v. *Robinson* (1962) 57 Cal.2d 213, 216 [18 Cal.Rptr. 524, 368 P.2d 124], the Supreme Court said: "The presumption of 'insufficient consideration' and 'undue influence' created by Civil Code section 2235, is not applicable to a contract by which the relation of attorney and client is originally created and the attorney's compensation is fixed. 'The confidential relation does not exist until such contract is made and in agreeing upon its terms the parties deal at arm's length.' (*Cooley* v. *Miller & Lux,* 156 Cal. 510, 524 [105 P. 981]; see also *Cooley* v. *Miller & Lux,* 168 Cal. 120, 131 [142 P. 83]; *Youngblood* v. *Higgins,* 146 Cal.App.2d 350, 352 [303 P.2d 637]; 5 Am.Jur., Attorneys at Law, § 189, p. 375.) . . . No attorney could safely or reasonably negotiate any fee agreement with a prospective client without some preliminary investigation of the facts of the case and a disclosure to the prospective client of the legal steps which in his judgment must be taken. If by the very fact of such investigation and disclosure the relationship of attorney and client would thereby be created, the attorney would be placed in the impossible position of becoming the prospective client's attorney while he was attempting to reach an agreement with him as to whether he should become his attorney or not."

None of the cases since the 1963 amendment have directly construed it. Three cases, *Gold* v. *Greenwald* (1966) 247 Cal.App.2d 296 [55 Cal.Rptr. 660]; *Carlson, Collins, Gordon & Bold* v. *Banducci* (1967) 257 Cal.App.2d 212 [64 Cal.Rptr. 915]; and *Trafton* v. *Youngblood* (1968) 69 Cal.2d 17 [69 Cal.Rptr. 568, 442 P.2d 648], dealt with events that occurred before the amendment became effective and thus did not discuss it. The fourth, *Baron* v. *Sarlot* (1975) 47 Cal.App.3d 304 [120 Cal.Rptr. 675] (decided after the briefs were filed in the present case), found the amendment was not "significant" on the particular facts alleged. We hold that the amendment, properly construed, prevents the application of the presumption to any agreement relating to fees, even where there is a pre-existing attorney-client relationship. The trial court erred in not trying the issues in the case without the application of such a presumption.

The judgment is reversed.

Friedman, Acting P. J., and Evans, J., concurred.