**James C. ORR, Trustee, Plaintiff,**

v.

**BLACK & FURCI, P.A., Roy Black, Defendants.**

**No. 93–642–CIV–ORL–18.**

United States District Court, M.D. Florida, Orlando Division.

Feb. 3, 1995.

Kevin F. Foley, Maguire, Voorhis & Wells, P.A., Orlando, FL, for plaintiff.

Robert A. Soriano, James B. Baldinger, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, FL, Scott A. Kornspan, Black & Seiden, P.A., Miami, FL, for defendants.

## ORDER

G. KENDALL SHARP, District Judge.

This case is before the court on Defendants' motion for summary judgment. Plaintiff James C. Orr (Orr) is the Chapter 11 Trustee of Timothy S. Brumlik's (Brumlik) and Patricia Brumlik's estate in the related bankruptcy case, No. 91–03720–6C1. Orr brought this case against Defendants Black & Furci, P.A. and Roy Black (Black), alleging that Black was negligent in his representation of Brumlik in a federal criminal matter in 1990. Orr seeks damages for professional malpractice and for breach of contract, an accounting of Roy Black's expenses in representing Brumlik, and rescission of the Fee Agreement between Black and Brumlik. Upon review of the case file and the applicable law, the court concludes that Defendants are entitled to summary judgment on all counts.

### I. Facts

Timothy S. Brumlik was arrested on September 15, 1989, pursuant to an undercover operation conducted by the Florida Department of Law Enforcement (FDLE) and the Internal Revenue Service (IRS). This arrest ultimately led to a six count federal indictment for money laundering, forfeiture, wire fraud, and attempting to import cocaine. Brumlik's potential exposure under this indictment included life imprisonment. Brumlik retained Black & Furci, P.A. to represent him in the criminal proceeding in the United States District Court, Middle District of Florida in Orlando. On October 18, 1989, Roy Black and Brumlik signed a Fee Agreement wherein Black agreed to represent Brumlik in the specific criminal proceedings then against him in exchange for $250,000 plus expenses. The fee was to include representation "up to the filing and arguing of a motion for a new trial; it includes interlocutory appeals, but not an appeal from a final judgment of guilt...." (Fee Agreement). The Fee Agreement also provided that "should the case be settled in any other manner than by contested trial, no part of the fee is to be returned." The Brumliks ultimately paid $301,435 in fees and costs to Black & Furci. The Brumliks also retained James Russ (Russ) to serve as co-counsel in the case.

The lead FDLE agent in the investigation against Brumlik, Juan (Tony) Iturrey (Iturrey), also was arrested in late October 1989. Iturrey was charged with violating federal bribery laws, because he forced the confidential informant in the Brumlik case to pay a portion of the informant's reward to him. Conversations between Iturrey and the informant were recorded. Black filed a motion to require the government to provide copies of these tapes. The information contained on these tapes, including a statement by Iturrey that Brumlik was not a money launderer, was such that the government acknowledged that it might have to provide them to Brumlik's attorneys as exculpatory information under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Black and Russ began to investigate the facts and law of the case and to prepare for trial. Before translating all of the Iturrey-informant tapes (from Spanish), Black and Russ recommended that Brumlik plead guilty to a reduced charge. On January 12, 1990, Brumlik's attorneys met with Assistant United States Attorney Ronald Hayward and two IRS agents for a lengthy settlement conference. Out of this conference emerged a Plea Agreement, to which Brumlik agreed on January 19. On January 22, Brumlik pled guilty to a superseding information charging him with one count of money laundering in violation of 18 U.S.C. § 1956(a)(3)(B) (1988). At the arraignment, Brumlik admitted that he had committed the crime charged. Brumlik explained to the court that a man had approached him seeking to purchase real estate

with money obtained from illegal drug sales. Despite this fact, Brumlik agreed to sell a piece of real estate to the individual. With this explanation, the court accepted Brumlik's guilty plea.

The Plea Agreement specified that Brumlik would "cooperate fully with the government and ... testify ... in connection with the charges in this case in other matters.... and mak[e] himself available for interviews by law enforcement officials." In turn, the government agreed to consider whether such cooperation qualified as "substantial assistance," thus qualifying Brumlik for a reduced sentence. In addition, the government agreed not to charge Brumlik with any additional crimes to which he admitted during any interviews with the law enforcement personnel. The Plea Agreement did not provide for a shield protecting Brumlik from jeopardy assessments or immediate levies to be issued by the IRS based on information gained from the interviews.

In accordance with the Plea Agreement, Brumlik submitted to extensive debriefings by government agents. The government agents debriefed Brumlik for 16 or 17 full days; Black did not attend any of these sessions, while Russ attended the sessions for four days. While the plea negotiations were ongoing, Black and Russ consulted attorneys in Washington, D.C. who advised Brumlik with regard to communications matters. Black and Russ were concerned about the indirect impact of a guilty plea on Brumlik's television station licenses. The affidavit of Plaintiff's expert, John P. Hume, asserts that Black should have been aware that Brumlik also was exposing himself to potentially severe civil tax liability. Black did not advise Brumlik, however, of the potential civil tax consequences of Brumlik's debriefings.

Brumlik was sentenced on April 22, 1990. During the proceedings, Brumlik announced, "There's no question in my mind ... that I take responsibility for what I did." The court reduced Brumlik's sentence level by two units for Brumlik's acceptance of responsibility, ending with a Total Offense Level of 22, and a jail term of 48 months. The Eleventh Circuit affirmed the judgment of the court on appeal. *United States v. Brumlik,* 947 F.2d 912 (11th Cir.1991).

In conjunction with Brumlik's arrest the IRS had executed search warrants and seized a large amount of Brumlik's business records. The IRS was able to learn information previously unknown to it through the debriefings. On April 30, the IRS issued two jeopardy assessments, one to Brumlik and one to Brumlik and his wife, immediately executing on the Brumliks' remaining assets. On May 1, Brumlik sent a letter to Black terminating Black & Furci's representation.

Brumlik collaterally attacked his sentence pursuant to 28 U.S.C. § 2255 (1988), claiming that he received ineffective assistance of counsel. Brumlik claimed that his counsel had failed to object to the government's failure to file a downward departure motion or to recommend the lower end of the sentencing guidelines range, based on Brumlik's cooperation with law enforcement officials. Also, Brumlik asserted that his counsel had failed to object to the use of sting money to enhance his offense level. Both of these claims were denied by the court, holding that "Defendant has not met his burden of demonstrating that counsel's conduct fell below an objective standard of reasonableness.... [and] has not shown prejudice with regard to this matter, as it was within the Government's discretion to file a substantial assistance motion, and the Court was not required to accept the Government's recommendations."

## II. Legal Discussion

Orr has filed suit as Chapter 11 Trustee of the Brumlik estate against Black & Furci, P.A. and Black, on four state law counts. Count I calls for an accounting of the funds Brumlik gave to Black for legal representation. Count II alleges breach of the Fee Agreement between Black and Brumlik, and requests damages on the agreement. Count III alternatively seeks rescission of the Fee Agreement. Finally, Count IV asserts that Defendants are liable for professional malpractice for Black's representation of Brumlik. Defendants have filed a motion seeking summary judgment on all counts pursuant to Federal Rule of Civil Procedure 56. The court will address the professional malprac-

tice claim first, followed by the contract claims and the request for an accounting.

### A. *Summary Judgment Standards*

Summary judgment is authorized if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510.

The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied the burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14; *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). The moving party may rely solely on his pleadings to satisfy this burden. *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53; Fed.R.Civ.P. 56(c).

"[A]ll that is required [to proceed to trial] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510 (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). Summary judgment is mandated, however, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

### B. *Professional Malpractice*

■ Orr has claimed that Black was negligent in representing Brumlik, because he failed to take proper account of the Iturrey tapes, and because he failed to properly protect Brumlik from the civil tax consequences of his guilty plea. In his motion for summary judgment, Black asserts that an attorney should not be liable for malpractice in a criminal case unless the prospective plaintiff is innocent of the crime for which he was tried. Black also claims that Orr is collaterally estopped from raising the issue of malpractice with regard to Black's representation of Brumlik in the criminal case, because Brumlik's motion for habeas corpus based on ineffective assistance of counsel was denied. Finally, Black asserts that he should not be held liable for any tax problems indirectly caused by Brumlik's debriefing because those issues were outside the scope of Black's responsibility, which was strictly limited to the criminal proceeding.

■ Generally, in a claim for legal malpractice plaintiffs must plead and prove (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) the attorney's negligence resulted in and was the proximate cause of loss to the client/plaintiff. *See Mayo v. Engel*, 733 F.2d 807, 811 (11th Cir.1984) (interpreting Florida law). Black asserts that the court should determine as a matter of law that a malpractice plaintiff's criminal conduct is the proximate cause of any loss a plaintiff suffers as a result of that conduct. Although a number of states have considered the situation, the issue apparently is one of first impression in Florida. This court therefore must interpret Florida law to determine what rule Florida courts most would likely adopt. *See Nichols v. Anderson*, 837 F.2d 1372, 1375 (5th Cir. 1988).

Most of the states considering the issue have determined that a plaintiff in a malpractice action must establish his innocence in order to establish the attorney's liability. Some state courts have fashioned requirements that malpractice plaintiffs obtain postconviction relief from their criminal trials, including an exoneration of their criminal charge, before any "harm" can be established for a malpractice action. *See, e.g., Stevens v. Bispham,* 316 Or. 221, 851 P.2d 556 (1993); *Shaw v. State, Dep't of Admin.,* 816 P.2d 1358 (Alaska 1991); *but see Gebhardt v. O'Rourke,* 444 Mich. 535, 510 N.W.2d 900 (1994). This conclusion has been referred to as the "no relief-no harm" rule. Because the harm does not occur until post-conviction relief is granted, the statute of limitations for bringing a malpractice action is tolled until relief is granted. *See Stevens, supra,* 851 P.2d at 566.

Rather than declare that criminal defendants/malpractice plaintiffs have suffered no harm until their conviction has been overturned, other courts have held that plaintiffs who cannot prove their innocence have proximately caused whatever injury they suffer as a result of their conviction. *See, e.g., Streeter v. Young,* 583 So.2d 1339 (Ala.1991); *Carmel v. Lunney,* 70 N.Y.2d 169, 518 N.Y.S.2d 605, 511 N.E.2d 1126 (1987); *Peeler v. Hughes & Luce,* 868 S.W.2d 823 (Tex.Ct.App.1993). These courts have so ruled on the basis of various public policy rationales. In *Carmel,* for example, the New York Court of Appeals declared, "[B]ecause criminal prosecutions involve constitutional and procedural safeguards designed ... to protect criminal defendants from overreaching governmental actions ... criminal malpractice cases [are] unique, and policy considerations require different pleading and substantive rules." 518 N.Y.S.2d at 608, 511 N.E.2d at 1128; *see also* Susan M. Treyz, Note, *Criminal Malpractice: Privilege of the Innocent Plaintiff?,* 59 Fordham L.R. 719, 731 (1991). Courts have been reluctant to permit plaintiffs to sue their attorneys when they are guilty of the crime for which they were tried, or to which they pled guilty in order to avoid a trial. "[T]he purpose of criminal and civil trials is to discover the truth, and if the truth is that the defendant committed unlawful acts which constitute the crime ... charged, he will not be able to collect damages for the discovery of the truth." *Bailey v. Tucker,* 533 Pa. 237, 621 A.2d 108, 113 (1993). In cases where "a person is convicted of a crime because of the inadequacy of counsel's representation, justice is satisfied by the grant of a new trial." *Id.*

However, in *Krahn v. Kinney,* 43 Ohio St.3d 103, 538 N.E.2d 1058 (1989), the Ohio Supreme Court explicitly rejected the idea that criminal malpractice plaintiffs must prove their innocence to present a cognizable claim. The court reasoned that even though a plaintiff may plead guilty to a crime, he may still have been harmed and should be able to maintain a malpractice action against his attorney. As the court stated, "[The plaintiff] may have made a valid plea on the day of trial, but she would have been better served had she accepted the earlier bargain.... [T]he injury in such a situation 'is not a bungled opportunity for vindication, but a lost opportunity to minimize her criminal record.'" *Krahn,* 538 N.E.2d at 1061 (quoting Court of Appeals). Ohio, therefore, legally recognizes that harm may result from negligent representation in a criminal trial even when the defendant is guilty of the crime.

Although no Florida court has ruled on this specific issue, the Florida Supreme Court has decided that collateral estoppel should apply to criminal defendants who raise unsuccessful ineffective assistance of counsel claims and then seek damages for attorney malpractice. *Zeidwig v. Ward,* 548 So.2d 209 (Fla.1989). As the court stated, "If we were to allow a claim in this instance, we would be approving a policy that would approve the imprisonment of a defendant for a criminal offense ... but which would allow the same defendant to collect from his counsel damages in a civil suit for ineffective representation because he was improperly imprisoned. To fail to allow the use of collateral estoppel in these circumstances is neither logical nor reasonable." *Zeidwig,* 548 So.2d at 214.

In Florida, "proximate causation ... is concerned with whether and to what ex-

tent the defendant's conduct foreseeably and substantially caused the specific injury that occurred." *McCain v. Florida Power Corp.*, 593 So.2d 500, 502 (Fla.1992). While proximate causation ordinarily is a factual issue, in certain cases proximate cause may be determined as a matter of law, based on fairness and considerations of public policy. *See Sakon v. Pepsico, Inc.*, 553 So.2d 163 (Fla.1989); *Stahl v. Metropolitan Dade County*, 438 So.2d 14 (Fla.Dist.Ct.App.1983). The policy announced in *Zeidwig* against permitting criminal defendants two opportunities to prove that their representation was inadequate dovetails with the policies announced by states requiring innocence to bring a malpractice claim. In accordance with this policy, it is the criminal defendant's guilty conduct that foreseeably and substantially causes the injuries that occur as a result of his conviction. The court concludes that Florida courts would agree with the majority rule, and "accept as the proximate cause ... of all damages which occurred to [plaintiff] by reason of [the indictment], his guilt and his guilt alone." *Weiner v. Mitchell, Silberberg & Knupp*, 114 Cal.App.3d 39, 170 Cal. Rptr. 533, 538 (1980).

■ The appropriateness of this rule is particularly evident in this situation, where Brumlik pled to a superseding information that represented a significant reduction in his exposure to criminal liability. Presumably, this reduction was the result of negotiation by Brumlik's attorneys. Accordingly, the court holds that when criminal defendants plead guilty to a crime, as malpractice plaintiffs they must prove their innocence in order to maintain a cause of action against their attorney. The court limits its holding to situations in which the malpractice plaintiff pleads guilty, and does not speak to the somewhat different situation where a criminal defendant maintains his innocence throughout a criminal trial. Therefore, the court grants the Defendants' motion for summary judgment as to the professional malpractice claim. The court finds it unnecessary to evaluate Defendants' arguments as to collateral estoppel and the scope of Black's representation.

### C. Breach of Contract

■ Orr also asserts that Defendants breached the Fee Agreement into which they entered with Brumlik. Orr's claim focuses on an allegedly implied provision that Defendants "would represent Mr. Brumlik with professional due care in a manner normally exercised by similar (sic) situated attorneys." (Amended Complaint at 4). Because the Defendants allegedly failed to do so, Orr claims the fee that Defendants charged was unconscionable. Orr has both sought damages for breach of the contract and, alternatively, sought rescission of the contract.

This claim for breach of contract in essence restates the claim based on professional malpractice. Rather than assert that Defendants completely failed to fulfill any of their obligations under the Fee Agreement, Orr's claim rests on the allegation that Black was negligent in performing his duties. Since the court has held that criminal malpractice claims may not be maintained by plaintiffs who do not assert their innocence, it would be illogical to permit malpractice plaintiffs to circumvent this rule by alleging the same facts under a claim for breach of contract. Accordingly, the court holds that breach of contract claims that allege only an attorney's negligence in fulfilling his duties must contain an allegation of innocence by the plaintiff.

■ Orr may be understood to argue that Black failed to adhere to the contract by not appearing with Brumlik during the debriefing sessions. The contract makes clear, however, that Black was only retained to defend Brumlik in the criminal proceedings then pending. Under Florida law, "it is not sufficient merely to assert an attorney-client relationship existed between the parties; it is essential to allege the relationship existed with regard to the acts or omissions upon which the malpractice claim is based." *Maillard v. Dowdell*, 528 So.2d 512, 514 (Fla.Dist. Ct.App.1988), *rev. denied* 539 So.2d 475 (Fla. 1988); *see also Dahl–Eimers v. Mutual of Omaha Life Ins. Co.*, 986 F.2d 1379, 1382 (11th Cir.1993) (noting that courts may not rewrite contracts to create ambiguity). In the Plea Agreement into which the government and Brumlik entered, both the federal

government and the State of Florida agreed not to charge Brumlik with any other crime to which the defendant admitted during the course of the debriefing sessions (Plea Agreement at 3, 5). Any information gleaned from Brumlik in the debriefings, then, could not be used against him in the criminal proceedings for which Black had been retained in the Fee Agreement. Therefore, Black cannot be held liable for breaching the Fee Agreement for his failure to appear at the debriefing sessions. Black did represent Brumlik at his arraignment and sentencing, and it is clear from the transcripts of both proceedings that Black was a zealous advocate in Brumlik's behalf. The court holds that Black did not breach the Fee Agreement.

██ Orr has not asserted that the Fee Agreement was unconscionable at the time the parties entered into it; rather he claims that the fee charged should be deemed excessive now when one considers the amount of work done by Black to earn it. As Plaintiff's expert claims, "[F]rom the date of the fee agreement, looking forward, the fee was not excessive; however, looking back today, it is obvious that due to Mr. Black's negligence, the fee was excessive." (Affidavit of John P. Hume at 3). Generally, however, the reasonableness of attorney's fee agreements and other contracts is evaluated "as it appeared to the parties at the time the contract was entered into." *Setzer v. Robinson*, 57 Cal.2d 213, 18 Cal.Rptr. 524, 368 P.2d 124, 127 (1962) (quoting *Youngblood v. Higgins*, 146 Cal.App.2d 350, 303 P.2d 637, 639 (1956)). The fee agreement contemplated that the case might be resolved without going to trial; in that event the contract provided that no portion of the fee be returned. The court cannot hold that the contract was unconscionable when the parties agreed to its terms. Further, holding that the agreement is unconscionable because of Black's alleged negligence is inappropriate for the reasons stated above. Accordingly, the court grants Defendants' motion for summary judgment with regard to Counts II and III of the amended complaint.

### D. *Accounting*

██ Orr has also requested an accounting, on the ground that the attorney's fee was grossly excessive and unreasonable, since the criminal proceeding ended in the entry of a guilty plea and because Brumlik retained another attorney who performed a substantial amount of the work. The Fee Agreement specifically provided that Black would represent Brumlik for a flat fee of $250,000 plus costs, and "should the case be settled in any other manner than by contested trial, no part of the fee is to be returned." (Fee Agreement). Brumlik also freely chose to retain Russ as Black's co-counsel. Neither of these factors suggest that an accounting is appropriate in this case.

██ Orr asserts that he is entitled to an accounting because Black was terminated as counsel prior to providing full representation. The money paid to Defendants for their representation of Brumlik was not a retainer to be earned through an hourly fee; the fee agreement established a flat fee for Brumlik's representation, payable regardless of the number of hours spent working on the case. Orr cites *The Florida Bar v. Grusmark*, 544 So.2d 188 (Fla.1989), to support his position that even in this situation he is entitled to an accounting. In *Grusmark*, the client paid an attorney a flat fee of $5,000 to be represented in a criminal proceeding. The attorney worked four or five hours on the case, and prepared only for a bond hearing to release the client from jail. Immediately thereafter, the client terminated the attorney. The Florida Supreme Court held that because the attorney had been fired without having represented the client through the bulk of the criminal proceeding, the client was entitled to an accounting of funds that had not been reasonably expended. *Id.* at 190.

Though there are some similarities, *Grusmark* does not control this case. Here, Black represented Brumlik through plea negotiations, the entry of Brumlik's guilty plea, and sentencing. He fulfilled every obligation for which he was responsible under the Fee Agreement between the parties. The only recourse from the criminal proceedings that remained for Brumlik when Black was termi-

nated was an appeal from the judgment, for which Black explicitly was not responsible. Accordingly, the court holds that an accounting is not justified in this case, and grants Defendants' motion for summary judgment with regard to Count I.

### III. Conclusion

The court **GRANTS** Defendants' motion for summary judgment (Doc. 127) on all four counts of Orr's complaint. Because Orr cannot allege Brumlik's innocence as to the underlying money laundering charge, Orr's professional malpractice claim cannot be maintained. Also, the court concludes as a matter of law that Black fulfilled the requirements of the Fee Agreement, and that the Fee Agreement was not unconscionable. Therefore, Orr's breach of contract claim and request for rescission must fail. Finally, the court finds that Orr is not entitled to an accounting of the funds paid to Defendants pursuant to the Fee Agreement. The court instructs the clerk of the court to enter judgment accordingly.

It is **SO ORDERED.**